13564

STATE EX REL. CONEY *ET AL.* v. HICKLIN
ELLERBE *ET AL.* v. BLALOCK MOTOR EXPRESS, INC.

(167 S. E., 674)

*Messrs. John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey,* and *Irvine F. Belser,* for petitioners.

*Messrs. B. W. Wait, Nathans & Sinkler* and *James H. Fowles,* for respondents,

January 27, 1933.

The opinion of the Court was delivered by Mr. Justice Stabler.

These two suits, instituted in the original jurisdiction of the Court, were heard together on argument, and will be disposed of in one opinion. For the sake of convenience we will refer to them as the *Hicklin case* and the *Blalock case*. With the exception of one question applicable only to the latter, the questions involved in the two cases are identical.

It is alleged and admitted that the respondents come within Class F of motor vehicle carriers, defined in the amendatory Act of April 7, 1930 (36 Stat. at Large, page 1068), as consisting of persons, firms, or corporations proposing to engage in the business known as contract hauling of freight or property, but not proposing to operate upon a regular schedule or over a regular route or to receive patronage along the route, and as such are required by the Act to obtain a certificate to operate and to pay the license fee therefor. It is further alleged that the respondents are now "carrying on their motor transportation business in the State of South Carolina over the public highways without any certificate and without paying any of the fees or taxes therefor, and in

violation of the said laws hereinabove mentioned and of the orders and rules of the Railroad Commission issued thereunder."

The purpose of these actions, as set forth in the petitions, is to enforce the provisions of Sections 8507 to 8530, inclusive, of Chapter 162 of the Code of 1932 (Acts of 1925, page 252; Act 1928, page 1238; Acts 1930, pages 1068, 1100 and 1327; and Acts 1931, page 145), and to require the respondents to comply with these Acts and the rules and orders of the Railroad Commission promulgated thereunder. The prayer of the petitions is that these Acts be construed and enforced by this Court, that a mandatory order of injunction issue directing and requiring the respondents to comply therewith, and that they be enjoined from engaging in business as contract haulers without such compliance.

The respondents interposed demurrers to the petitions, and also made returns and answers.

With regard to the demurrers, it is sufficient to say that the identical grounds made in these cases were considered by the Court in *King v. Aetna Insurance Company et al.* 168 S. C., 84, 167 S. E., 12, in its opinion filed November 23, 1932. Chief Justice Blease, who wrote the opinion in that case, went into a full discussion of the questions made, and disposed of them adversely to the contentions of the respondents there and here.

By their returns and answers the respondents challenge the constitutionality of the Acts referred to (Chapter 162 of the Code of 1932), Section 66 of the general appropriation Act of 1931 (37 St. at Large, page 453), and Section 34 of the general appropriation Act of 1932 (37 St. at Large, page 1605), applicable to contract carriers, as to both State and Federal Constitutions, contending that they are invalid because of certain exemptions made, requirements relating to cargo insurance, authority conferred on the Railroad Commission to regulate rates of contract carriers, the imposition of license fees based upon "carrying capacity,"

and the imposition of a tax upon the "gross receipts" of a carrier doing an interstate as well as an intrastate business.

In *Stephenson v. Binford*, 53 S. Ct., 181, 184, 77 L. Ed. ...., a very recent utterance of the United States Supreme Court as to the right and power of a State to regulate the use of its highways, the Court stated this broad general rule: "It is well established law that the highways of the State are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit"—citing cases.

Section 8507 of the Code defines "motor vehicle carrier," for the purposes of the Act, as "every corporation or person * * * operating * * * any motor propelled vehicle * * * used in the business of transporting persons or property for compensation over any improved public highway * * * as hereinafter defined, in this State."

I. Section 8508 of the Code, which contains certain exemptions, is as follows: "No corporation or person, their lessees, trustees, or receivers, shall operate any motor-propelled vehicle as herein before defined for transportation of persons or property for compensation on any improved public highways in this State, except in accordance with the provisions of Sections 8507 to 8524, and such operation shall be subject to control, supervision and regulation by the commission in the manner provided by Sections 8507 to 8524: Provided, however, That nothing in Sections 8507 to 8524 contained shall apply to motor vehicles while used exclusively for transporting persons to and from schools, Sunday schools, churches, or religious services of any kind, or to or from picnics or upon special prearranged excursions, or to United States mail carriers operating star routes, while engaged solely in carrying mail, or to farmers or dairymen, hauling dairy or farm products; or lumber haulers engaged in transporting lumber and logs from the forest to the shipping points."

The respondents urge that the exemption of "farmers or dairymen, hauling dairy or farm products, or lumber haulers engaged in transporting lumber and logs from the forest to the shipping points," is discriminatory, and violates the Fifth and Fourteenth Amendments to the Federal Constitution and Section 5 of Article 1 of the State Constitution. The petitioners contend that the Railroad Commission has adopted regulations embodying the construction placed by it upon this provision, to the effect that the exemption applies only to farmers and dairymen who are engaged in hauling their own products and to farmers and dairymen who occasionally, but not regularly, haul farm or dairy products for others; those who make a regular business of transporting farm and dairy products not being deemed for the purpose of the Act to be farmers. They also contend that, even if the construction placed upon the provision of the Act by the commission be rejected, there is a valid basis of discrimination in favor of farmers and dairymen hauling farm and dairy products, in that they make only a limited use of the highways. The respondents answer that the construction given to the provision by the commission cannot be sustained without the insertion of additional words—which, in effect, would be judicial legislation.

In support of their contention, counsel for respondents rely in the main upon the case of *Smith v. Cahoon*, 283 U. S., 553, 51 S. Ct., 582, 583, 75 L. Ed., 1264, in which the United States Supreme Court declared unconstitutional a statute of the State of Florida enacted for the purpose of regulating auto transportation in that State. The Act construed contained the following section (Laws Fla., 1929, c. 13700, § 1 (h) : "The term 'auto transportation company' when used in this Act means every corporation or person, their lessees, trustees or receivers, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transporting persons or property for compensation or as a common carrier

over any public highway in this State between fixed *termini* or over a regular route; Provided, That the term "auto transportation company' as used in this Act, shall not include corporations or persons engaged exclusively in the transportation of children to or from school, or any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and Salt Fish and Oysters and Shrimp from the point of production to the assembling or shipping point enroute to primary market, or to motor vehicles used exclusively in transporting or delivering dairy products or any transportation company engaged in operating taxicabs, or hotel buses from a depot to a hotel in the same town or city."

In support of their position, petitioners rely mainly upon the case of *Continential Baking Company v. Woodring,* 286 U. S., 352, 52 S. Ct., 595, 596, 76 L. Ed., 1155, 81 A. L. R., 1402, a *Kansas case,* in which the United States Supreme Court declared an Act of that state relating to the regulation of motor traffic constitutional. Sections 1 and 2 of the Act (Laws Kan., 1931, c. 236), are as follows (special attention is directed to Section 2, by way of comparison with the above-quoted provision of the Florida Act):

"Section 1.    (a)  The terms 'motor vehicle when used in this Act means any automobile, automobile truck, trailer, motor bus, or any other self-propelled or motor-driven vehicle used upon any public highway of this State for the purpose of transporting persons or property. (b) The term 'public motor carrier of property' when used in this Act shall mean any person engaged in the transportation by motor vehicle of property for hire as a common carrier having a fixed *termini* or route. (c) The term 'contract motor carrier of property' when used in this Act shall be construed to mean any person not a public motor carrier of property engaged in the transportation by motor vehicle of property for hire as a business. (d) The term 'private motor carrier of property' when used in this Act shall be construed to

mean any person engaged in the transportation by motor vehicle of property sold or to be sold by him in furtherance of any private commercial enterprise. (e) The term 'public motor carrier of passengers' when used in this Act shall mean any person engaged in the transportation by motor vehicle of passengers or express for hire as a common carrier having a fixed *termini* or route. (f) The term 'contract motor carrier of passengers' when used in this Act shall be construed to mean any person not a public motor carrier of passengers engaged in the transportation by motor vehicle of passengers or express for hire. (g) The term 'public highway' when used in this Act shall mean every public street, road or highway or thoroughfare of any kind used by the public.

"Sec. 2. That this Act shall not apply to motor carriers who shall operate wholly within any city or village of this State, or private motor carriers who operate within a radius of twenty-five miles beyond the corporate limits of such city, or any village, nor to the transportation of live stock and farm products to market by the owner thereof or supplies for his own use in his own motor vehicle; or to the transportation of children to and from school."

The Court in the *Continental Baking Company case,* in distinguishing that case from the *Cahoon case,* had this to say:

"The third exemption applies to 'the transportation of livestock and farm products to market by the owner thereof or supplies for his own use in his own motor vehicle.' In *Smith v. Cahoon, supra,* the State statute, which applied to all carriers for compensation over regular routes, including common carriers, exempted from its provisions 'any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and Salt Fish and Oysters and Shrimp from the point of production to the assembling or shipping point enroute to primary market, or to motor vehicles used ex-

clusively in transporting or delivering dairy products.' The stated distinction was thus established between carriers, and between private carriers, notwithstanding the fact that they were 'alike engaged in transporting property for compensation over public highways between fixed *termini* or over a regular route.' The Court was unable to find any justification for this discrimination between carriers in the same business, that is, 'between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities.'

"The distinction in the instant case is of a different sort. The statute does not attempt to impose an arbitrary discrimination between carriers who transport property for hire, or compensation, with respect to the class of products they carry. The exemption runs only to one who is carrying his own livestock and farm products to market or supplies for his own use in his own motor vehicle. In sustaining the exemption, the District Court referred to the factual basis for the distinction. 'The Legislature knew,' said the Court 'that as a matter of fact farm products are transported to town by the farmer, or by a nonexempt "contract carrier" employed by him. The Legislature knew that as a matter of fact the use of the highways for the transportation of farm products by the owner is casual and infrequent and incidental; farmers use the highways to transport their products to market ordinarily but a few times a year. The Legislature rightly concluded that the use of the highways for carrying home his groceries in his own automobile is adequately compensated by the general tax imposed on all motor vehicles.' 55 F.(2d) [347] at page 352. And the Court properly excluded from consideration mere hypothetical and fanciful illustrations of possible discriminations which had no basis in the actual experience to which the statute was addressed. The Court found a practical difference between the case of the appellants 'who operate fleets of trucks in the

conduct of their business and who use the highways daily in the delivery of their products to their customers,' and that of 'a farmer who hauls his wheat or livestock to town once or twice a year.' The Legislature in making its classification was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations, which by reason of their habitual and constant use of the highways brought about the conditions making regulation imperative and created the necessity for the imposition of a tax for maintenance and reconstruction. As the Court said in *Alward v. Johnson,* 282 U. S., 509, 513, 514, 51 S. Ct., 273, 274, 75 L. Ed., 496, 75 A. L. R., 9: 'The distinction between property employed in conducting a business which requires constant and unusual use of the highways and property not so employed is plain enough.' See, also, *Bekins Van Lines v. Riley,* 280 U. S., 80, 82, 50 S. Ct., 64, 74 L. Ed., 178; *Carley & Hamilton v. Snook,* 281 U. S., 66, 73, 50 S. Ct., 204, 74 L. Ed., 704, 68 A. L. R., 194."

The petitioners also rely upon the case of *Schwartzman Service v. Stahl* (D. C.) 60 F. (2d), 1034, 1036. This decision was rendered by a three-judge Court, and, while not controlling as an authority, is able and persuasive. The statute construed in that case contains certain exemptions from the obligations and duties imposed by the act, among these being one that the act should not apply to "motor vehicles used exclusively in transporting farm and dairy products from the farm or dairy to warehouse, creamery or other original storage or market." This exemption was held to be reasonable and not arbitrary, and not to render the act unconstitutional. In its opinion the Court made the following pertinent observations:

"It must be acknowledged that the state has the power to regulate and control the movements of motor vehicles over its highways. This it may do in the interest of public convenience and safety and for the protection of the highways. Provisions of this character have been uniformly sustained.

*Buck v. Kuykendall,* 267 U. S., 307, loc. cit. 314, 45 S. Ct., 324, 69 L. Ed., 623, 38 A. L. R., 286; *Stephenson v. Binford et al.* ( D. C.), 53 F. (2d), 509.

"Moreover, while 'a citizen may have, under the Fourteenth Amendment, the right to travel and transport his property upon them by auto vehicle; yet 'he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause.' *Packard v. Banton,* 264 U. S., 140, loc. cit. 144, 44 S. Ct., 257, 68 L. Ed., 596.

"The highways belong to the state. It may make provisions appropriate for securing the safety and convenience of the public in the use of them. *Kane v. State of New Jersey,* 242 U. S., 160, 37 S. Ct., 30, 61 L. Ed., 222.

"Assuming, therefore, the power and right of the state to regulate and supervise its highways, such right cannot be hampered or restricted within narrow bounds. On the contrary, to the end that such right might be fully enjoyed and exercised, there is a constant recognition of the principle that the state 'has a broad discretion in classification in the exercise of its power of regulation.' *Smith v. Cahoon,* 283 U. S., 553, loc. cit. 566, 51 S. Ct., 582, 587, 75 L. Ed., 1264. Upon such classification, no person can interpose an objection, save only in those cases where the classification or discrimination is entirely arbitrary."

See, also, *Sproles v. Binford,* 286 U. S., 374, 52 S. Ct., 581, 583, 76 L. Ed., 1167, in which the United States Supreme Court upheld a discrimination in favor of "implements of husbandry," construed to mean tractors, plows, etc.; the use of the highways for this sort of transportation, as was pointed out, being temporary only. It also upheld an exemption in favor of vehicles transporting "property from point of origin to the nearest practicable common carrier receiving or loading point or from a common carrier un-

452

loading point by way of the shortest practicable route to destination." The Court distinguished the case from *Smith v. Cahoon,* and thus stated the basis of its decision: "But the Legislature in making its classifications was entitled to consider frequency and character of use and to adapt ·its regulations to the classes of operations, which by reason of their extensive as well as constant use of the highways brought about the conditions making the regulations necessary. *Continental Banking Company v. Woodring, supra."*

The petitioners contend that the *Cahoon case* may be validly distinguished in the cases at bar as it was in the cases cited, and in this we agree. In the first place, in the *Cahoon case,* the Court was dealing with a criminal prosecution, which point it stressed, saying: "It should be observed that this is not an action in equity where the enforcement of a statute awaits the final determination of the Court as to validity and scope." The cases before us are suits in equity, in which this Court is asked to construe the acts in question. Also, in that case, the discrimination was in favor of "any transportation company" engaged in hauling the class of products therein mentioned, while in the cases at bar the discrimination is in favor of farm and dairy products only when hauled by farmers and dairymen,' and in favor of lumber haulers engaged in transporting lumber and logs from the forest to the shipping points. In other words, there is a double element involved in the classification in this case, the class of persons and the class of products, while there was only one element of classification involved in the *Cahoon case,* namely, the class of products.

It must be conceded, as has been held in *German Alliance Insurance Company v. Superintendent of Ins. of State of Kansas,* 233 U. S., 389, 34 S. Ct., 612, 58 L. Ed., 1011, L. R. A. 1916C, 1189, that, even though an exemption operates as a discrimination, it is not necessarily invalid; and also, as is generally held, that a classification or discrimination should be allowed to stand, unless it is entirely arbitrary.

Unquestionably, the use by farmers and dairymen for the transportation of the farm and dairy products is seasonal and involves only a moderate use of the highways; and the exemption here is further limited by the fact that it can apply only to one whose principal business is that of a farmer or dairyman and not to one merely incidentally engaged in farming or dairying. As pointed out in the *Woodring case,* there is a practical difference between such use of the highways and that made by the respondents in this case, "who operate fleets of trucks in the conduct of their business and who use the highways daily in the delivery of their products to their customers," the Court holding, as we have seen, that the Legislature in making its classification was entitled to consider frequency and character of use, etc. In addition, there is this material consideration, that farming and dairying lie at the foundation of our economic structure, and are essential to the public welfare.

We think the respondents have failed to sustain the burden cast upon them of showing beyond a reasonable doubt that the exemption in question renders the Act unconstitutional and invalid.

It will be observed that this conclusion has been reached independently of the construction placed by the Railroad Commission upon the contested provision of the Act. We think that this construction is, in part, unsound. One hauling his own products in his own motor vehicle does not come within the purview of the Act, and no provision for his exemption is necessary. The Act applies only to those who are carriers for compensation, and the exemption can refer only to farmers and dairymen hauling farm and dairy products for compensation. The same may be said with regard to those hauling lumber and logs from the forest to the shipping points. See *Sproles v. Binford, supra.*

II. The respondents also contend that the Acts in question are invalid "because the requirements of Section 8511 that contract carriers must obtain and

carry cargo insurance violates the Fifth Amendment to the Constitution of the United States."

Section 8511 provides: "The commission shall, in the granting of a certificate, require the applicant to procure and file with said commission liability and property damage insurance, or surety bond with some casualty or surety company authorized to do business in this State, on such motor vehicle or vehicles to be used in the service aforesaid, in such amount as the commission may determine, insuring or indemnifying passengers or cargo and the public receiving personal injury by reason of any Act of negligence, and for damage to property of any person other than the assured; such policy or bond to contain such conditions, provisions, and limitations as the commissions may prescribe and the same shall be kept in full force and effect, and failure to do so shall be cause for the revocation of such certificate."

Respondents argue that one of the principal differences between a common carrier and·a private or contract carrier is, that the common carrier is an insurer, while the private or contract carrier is not; and that the Legislature cannot compel private carriers to become or to assume the duties and liabilities of common carriers. They contend that in our statute the Legislature attempted to put both Classes of carriers upon an identical footing and subject them to the same obligations, which was beyond their power to do, citing in support of their contention *Michigan Public Utilities Commission v. Duke,* 266 U. S., 570, 45 S. Ct., 191, 193, 69 L. Ed., 445, 36 A. L. R., 1105, where it is said that: "It is a burden upon interstate commerce to impose on plaintiff the onerous duties and strict liability of a common carrier, and the obligation of furnishing such indemnity bond to cover the automobile bodies hauled under his contracts as conditions precedent to his right to continue to carry them in interstate commerce. * * * Clearly, these requirements have no relation to public safety or order in the use of motor vehicles upon the highways, or to the collection of

compensation for the use of the highways. The police power does not extend so far." But, as pointed out in the *Stephenson case, supra,* the state statute construed in the *Duke case* expressly provided that all persons engaged in the transportation of persons or property for hire by motor vehicle upon the public highways of the State should be common carriers.

Similarly, as also pointed out in the *Stephenson case, Frost & Frost Trucking Company v. R. R. Commission,* 271 U. S., 583, 46 S. Ct., 605, 70 L. Ed., 1101, 47 A. L. R., 457, involved a state statute which had been construed by the California Supreme Court as requiring a private contract carrier to dedicate his property to the business of public transportation and to subject himself to all the duties and burdens imposed by the Act upon common carriers; and the United States Supreme Court, in accordance with the settled rule, accepted such construction as binding upon it.

Our statute, however, like that construed in the *Stephenson case,* expressly recognizes the distinction between common carriers and private contract carriers; and from an examination of the entire Act it is clear that the Legislature did not intend to put common carriers and private contract carriers on the same footing with regard to the matters here complained of. We think, and so hold, that in the case of private carriers, or contract carriers, the provisions of Section 8511 extend no further than to require such carriers to execute an indemnity bond, as the commission may prescribe under the provisions of the Act, for the protection of the public receiving injury, either in person or in property, by reason of any act of negligence of such private or contract carriers. We do not think it was the intent of the Legislature, in the passage of the Act, to require contract carriers to obtain and carry cargo insurance, and we construe the Act as not imposing upon them such requirement.

III. The respondents further contend that the Act is invalid "because the provision of Section 8516 vesting in the Railroad Commission the power and

authority, and imposing upon it the duty, of regulating the rates of contract carriers is likewise in violation of said constitutional provisions, being an unwarrantable interference with the right of private contract."

Section 8516 reads as follows: "The commission is hereby vested with power and authority and it shall be their duty to supervise and regulate every motor carrier in this State; to fix or approve the rates, fares, charges, classification and rules and regulations pertaining thereto, of each such motor carrier: Provided, however, That the rate now obtaining by the respective motor carriers shall remain in effect until such time, when pursuant to complaint and proper hearing, the commission shall have determined that said rate or rates are unreasonable: Provided, That the said commission shall fix as to class certificate C a maximum rate only."

As it is conceded that the Railroad Commission, which is vested with the power and authority to fix and approve rates, etc., as provided by Section 8516, has never, since the enactment of the law, exercised its power, if any it has under the Act, to supervise and regulate rates of contract carriers, the respondents here have no ground for complaint. See *Stephenson v. Binford, supra.*

IV. It is also contended that the Act is invalid "because the license fees required of contract carriers under Section 8512 are based solely upon 'carrying capacity,' and, hence, insofar as contract carriers engaged in interstate commerce are concerned, are void because they are not compensatory, and therefore violate Article 1, § 8, of the Constitution of the United States, and the Fifth and Fourteenth Amendments thereto."

With regard to holders of certificate F, to which class the respondents herein belong, Section 8512 provides: "For vehicles of carrying capacity of not over one and one-half tons, Thirty ($30.00) Dollars; for vehicles of carrying capacity of over one and one-half tons and not over two tons, Sixty ($60.00) Dollars; for vehicles of carrying capacity

of over two tons and not over three tons, One Hundred Twenty ($120.00) Dollars; for vehicles of carrying capacity of over three tons and not over four tons, two hundred ($200.00) Dollars; for vehicles of carrying capacity of over four tons and not over five tons, Four Hundred ($400.00) Dollars; for vehicles equipped fully with pneumatic tires; for vehicles equipped fully or partially with solid tires these fees shall be doubled."

In the *Duke case, supra,* the United States Supreme Court said: "A state which, at its own expense, furnishes special facilities for the use of those engaged in intrastate and interstate commerce may exact compensation therefor, and if the charges are reasonable and uniform, they constitute no burden on interstate commerce. *Hendrick v. Maryland,* 235 U. S., 610, 622, 59 L. Ed., 385, 390, 35 S. Ct., 140; *Kane v. New Jersey,* 242 U. S., 160, 167, 61 L. Ed., 222, 226, 37 S. Ct., 30. Such regulations are deemed to be reasonable and to affect interstate commerce only incidentally and indirectly."

We have made a careful examination of the authorities with reference to this particular contention, and think it is without merit. Such fees are collected, as provided for by Section 8517, for the purpose of maintaining the public highways over which such motor vehicles shall operate, as compensation for their use. Further, they are reasonable as to amount, and tend to contribute to the protection of the highways. We do not think that the provision of the Act here complained of constitutes an undue burden on interstate commerce.

V. The respondents in the *Blalock case* also raise a question as to the tax imposed on all carriers for hire under Section 66 of the general appropriation Act of 1931, which they attack as being violative of the interstate commerce clause of the United States Constitution, for the following reasons: (a) That said tax, imposed by the terms of said Act upon the 'gross receipts' of such carriers,

was a tax upon receipts from interstate as well as intrastate business, constituted a burden on interstate commerce in contravention of Article 1, Section 8, of the Constitution of the United States, and (b) was not in lieu of all other taxes, in violation of said last named provision and the Fourteenth Amendment."

It is well settled that the State may impose taxes upon the intrastate operations of a motor carrier, though such motor carrier is also engaged in interstate operations. *Interstate Busses Corporation v. Blodgett,* 276 U. S., 245, 48 S. Ct., 230, 72 L. Ed., 551. It was also there held that in a case of this sort the burden is upon the complainant to show that in actual practice the tax operates to deprive him of his constitutional rights, because the aggregate charge bears no reasonable relation to the privilege granted. Also it was said by the Court in the *Continental Baking Company case, supra,* that the Court should exclude "from consideration mere hypothetical and fanciful illustrations of possible discriminations which had no basis in the actual experience to which the statute was addressed." in the case at bar the evidence is clear that the Railroad Commission has not at any time undertaken to construe the Acts in question as imposing any taxes upon interstate operations, and, until this is done, respondent has no cause for complaint. See *Stephenson v. Binford, supra.*

The judgment of this Court is:

First. That the demurrers interposed by the respondents be, and the same are hereby, overruled.

Second. That the Acts in question are construed as herein indicated, and that the taxes and license fees required of the respondents by the petitioners thereunder are lawful and due, and that the petitioners be authorized to proceed to the collection thereof.

Third. That the petitioners have the right to apply to this Court hereafter for the issuance of such order, or orders, writ, or writs, as may be necessary to carry into effect the

conclusions and judgment of this Court, and upon their application therefor, at the proper time, that the order restraining the petitioners from proceeding to enforce the Acts of the General Assembly, referred to in these causes, be dissolved.

Mr. Chief Justice Blease and Messrs. Justices Carter and Bonham and Mr. Acting Associate Justice W. C. Cothran concur.