## HICKLIN ET AL. v. CONEY ET AL.

No. 94. Argued November 17, 1933.—Decided December 4, 1933.

*Mr. B. Wofford Wait* for appellants.

*Mr. Irvine F. Belser,* with whom *Mr. John M. Daniel,* Attorney General of South Carolina, was on the brief, for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The Railroad Commission of South Carolina brought this suit in the original jurisdiction of the Supreme Court of the State seeking the enforcement of the state statutes regulating transportation by motor vehicles.[1] The peti-

---

[1] Sections 8507 to 8530, c. 162 of the Code of 1932; Acts of 1925, p. 252, of 1928, p. 1238, of 1930, pp. 1068, 1100, 1327, and of 1931, p. 145.

tion alleged that the respondents below, including the present appellant, fell within Class " F " of motor vehicle carriers, that is, those known as contract carriers of property, not proposing to operate upon a regular schedule or over a regular route, and that they were carrying on their business on the public highways without having obtained the required certificates or paying the prescribed license fees. Appellant demurred to the petition and also made return and answer. The petitioners filed reply. Appellant contended that the statutory requirements, as applied to him as a private contract carrier, denied the equal protection of the laws and deprived him of due process of law in violation of the Fourteenth Amendment, and also, as he was engaged in interstate transportation, were repugnant to the commerce clause of the Federal Constitution. The Supreme Court of the State decided the Federal questions adversely to these contentions. 168 S.C. 440; 167 S.E. 674.

*First.* It was competent for the State in exercising its control over the use of the highways to make reasonable regulations governing that use by private contract carriers. These regulations may require on the part of interstate as well as intrastate carriers the payment of reasonable license fees and the filing of insurance policies to protect the interests of the public by securing compensation for injuries to third persons and their property from the negligent operations of such carriers. *Continental Baking Co.* v. *Woodring,* 286 U.S. 352, 365, 366; *Stephenson* v. *Binford,* 287 U.S. 251, 274, 277. The statutory requirements, in this instance, do not compel private contract carriers to become common carriers. *Stephenson* v. *Binford, supra,* pp. 265, 275. The contention that private contract carriers are required to carry " cargo insurance " (*Michigan Commission* v. *Duke,* 266 U.S. 570, 577) is unavailing in view of the construction to the contrary placed upon the statute by the state court. That court said [p. 455]:

"Our statute, however, like that construed in the *Stephenson* case, expressly recognizes the distinction between common carriers and private contract carriers; and from an examination of the entire Act it is clear that the Legislature did not intend to put common carriers and private contract carriers on the same footing with regard to the matters here complained of. We think, and so hold, that in the case of private carriers, or contract carriers, the provisions of Section 8511 extend no further than to require such carriers to execute an indemnity bond, as the commission may prescribe under the provisions of the Act, for the protection of the public receiving injury, either in person or in property, by reason of any act of negligence of such private or contract carriers. We do not think it was the intent of the Legislature, in the passage of the Act, to require contract carriers to obtain and carry cargo insurance, and we construe the Act as not imposing upon them such requirement."

Appellant complains of this construction of the statute as being contrary to its terms, but that question is not for us. The decision of the state court is controlling as to the meaning and extent of the statutory requirements. *St Louis S.W. Ry. Co.* v. *Arkansas*, 235 U.S. 350, 362; *Knights of Pythias* v. *Meyer*, 265 U.S. 30, 32, 33; *American Railway Express Co.* v. *Royster Guano Co.*, 273 U.S. 274, 280. Nor does the statute as construed exhibit a fatal defect of indefiniteness. Its requirements as to the appellant, as the state court has defined them, are not uncertain.

Another objection, that the Railroad Commission was authorized to regulate the rates of private contract carriers, was answered by the state court in saying that the Commission had never exercised such a power, "if any it has under the act," and hence that appellant had no ground for complaint. This is an adequate answer here,

on the present showing, as the Court does not deal with academic contentions. *Stephenson* v. *Binford, supra,* p. 277.

*Second.* Appellant insists that an undue burden is placed upon interstate commerce because the license fees are based on the " carrying capacity " of the vehicles. The state court held that the fees " are collected, as provided for by section 8517, for the purpose of maintaining the public highways over which such motor vehicles shall operate, as compensation for their use." The statute provides for the segregation, for this purpose, of the moneys collected. See *Clark* v. *Poor,* 274 U.S. 554, 555–557. In this view the fees are not open to the objection raised in *Interstate Transit, Inc.,* v. *Lindsey,* 283 U.S. 183, 186, 188. Carrying capacity, the size and weight of trucks, unquestionably have a direct relation to the wear and hazards of the highways. It is for this reason that the authority of the State to impose directly reasonable limitations on the weight and size of vehicles, although applicable to interstate carriers, has been sustained. *Morris* v. *Duby,* 274 U.S. 135, 143; *Sproles* v. *Binford,* 286 U.S. 374, 388, 389. As the State may establish such regulations directly, the State may adjust its license fees, otherwise valid as being reasonable and exacted as compensation for the use of the highways, according to carrying capacity in furtherance of the same purpose. *Clark* v. *Poor, supra.*

*Third.* The contention that appellant has been denied the equal protection of the laws is based on the discrimination resulting from the exemption of " farmers or dairymen, hauling dairy or farm products; or lumber haulers engaged in transporting lumber or logs from the forests to the shipping points." § 8508. Reliance is placed on our decision in *Smith* v. *Cahoon,* 283 U.S. 553. In that case, the statute applied to all carriers for compensation over regular routes and exempted from its provisions " any

transportation company engaged exclusively in the transporting of agricultural or horticultural, dairy or other farm products and fresh and salt fish and oysters and shrimp from the point of production to the assembling or shipping point en route to primary market, or to motor vehicles used exclusively in transporting or delivering dairy products." This distinction was thus established between all carriers, and between private carriers, notwithstanding the fact that they were " alike engaged in transporting property for compensation over public highways between fixed termini or over a regular route." The Court was unable to find any justification for this discrimination between carriers in the same business and operating under like circumstances, that is, between those who carried for hire farm products, or milk or butter, or fish or oysters, and those who carried for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. *Id.,* pp. 566, 567.

In *Continental Baking Co.* v. *Woodring, supra,* pp. 372, 373, the statutory exemption ran to one " who is carrying his own livestock and farm products to market or supplies for his own use in his own motor vehicles." Attention was called to the factual basis for the distinction as it had been pointed out by the District Court, which found a practical difference between the case of those " who operate fleets of trucks in the conduct of their business and who use the highways daily in the delivery of their products to their customers " and that of " a farmer who hauls his wheat or livestock to town once or twice a year." This Court said that the legislature in making its classification was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations which by reason of their habitual and constant use of the highways brought about the conditions making regulation imperative and created the necessity for the imposition of a tax for maintenance and reconstruction. The Court

quoted the observation in *Alward* v. *Johnson,* 282 U.S. 509, 513, 514: " The distinction between property employed in conducting a business which requires constant and unusual use of the highways, and property not so employed, is plain enough."

The exemptions in the instant case are not as limited as that in *Continental Baking Co.* v. *Woodring,* but they differ materially from that found to be objectionable in *Smith* v. *Cahoon.* The state court thus construed the scope, and described the effect, of the exemption in favor of farmers and dairymen: " Unquestionably, the use by farmers and dairymen for the transportation of farm and dairy products is seasonal and involves only a moderate use of the highways; and the exemption here is further limited by the fact that it can apply only to one whose principal business is that of a farmer or dairyman and not to one merely incidentally engaged in farming or dairying." Further, in its pleading, the Railroad Commission averred that it had uniformly construed the statute " as exempting farmers and dairymen only when hauling their own product, or only when hauling them occasionally and not as a regular business " and had adopted a formal regulation to that effect.[2] In support of its pleading, and

___

[2] This regulation is as follows: " The proviso under Section 2 of Act No. 170 of the Acts of 1925, as amended, providing that nothing contained in said section shall apply to farmers or dairymen hauling dairy or farm products is construed by the Railroad Commission in the performance of its duties in the enforcement of said Act to mean that nothing in the said section shall apply to farmers or dairymen hauling their own dairy or farm products, or to farmers and dairymen who occasionally, but do not regularly as a part of an established business, haul farm and/or dairy products for others for hire, but that persons who may also be engaged in part in farming operations but who make a regular business of transporting farm and/or dairy or other products for others for hire are not to be deemed farmers or dairymen for the purpose of this Act, and hence are required to comply with the act in all respects like other persons engaged in motor transportation for hire."

made a part of it, the Commission presented an affidavit by the Superintendent of the Motor Transportation Division of the Commission showing the manner in which the statute had been applied.

The state court in its opinion said that it reached its conclusion as to the validity of the statutory provision " independently of the construction placed by the Railroad Commission upon the contested provision of the Act." And the court pointed out that that construction was " in part " unsound inasmuch as " one hauling his own products in his own motor vehicle " did not come within the purview of the Act and no provision for his exemption was necessary. " The exemption," said the court, " can refer only to farmers and dairymen hauling farm and dairy products for compensation." The state court, however, did not express disagreement with the Commission's construction set forth in its regulation, that the exemption applied " to farmers and dairymen who occasionally, but do not regularly as a part of an established business, haul farm and/or dairy products for others for hire, but that persons who may also be engaged in part in farming operations but who make a regular business of transporting farm and/or dairy or other products for others for hire are not to be deemed farmers or dairymen for the purpose of this Act, and hence are required to comply with the Act in all respects like other persons engaged in motor transportation for hire." Nor have we anything before us to show that the statute is being enforced and the exemption construed in any other sense. Upon the present record, it appears that the exemption is applied with two limitations, *first,* that, as construed by the state court, it can refer only " to one whose principal business is that of a farmer or dairyman and not to one merely incidentally engaged in farming or dairying," and, *second,* under the construction of the Commission in enforcing the statute—a construction not disapproved by

the state court—that it applies only to farmers and dairy-
men who occasionally, and not as a regular business, trans-
port farm or dairy products for compensation. We can-
not say that a classification based on such a use of the
highways is an arbitrary one and thus encounters consti-
tutional objection.

The exemption in favor of those hauling lumber and
logs " from the forests to the shipping points " relates to
a limited class of transportation simply to places of ship-
ment and does not appear to be unreasonable. See
*Sproles* v. *Binford, supra,* p. 394.

The judgment of the state court is

*Affirmed.*