### DIXIE GREYHOUND LINES, Inc., v. McCARROLL, Com'r of Revenue.[*]

#### No. 11284.

Circuit Court of Appeals, Eighth Circuit.

Feb. 25, 1939.

A. L. Heiskell, of Memphis, Tenn. (J. H. Shepherd, of Memphis, Tenn., A. L. Barber and E. A. Henry, both of Little Rock, Ark., Chandler, Shepherd, Owen & Heiskell, of Memphis, Tenn., and Barber & Henry, of Little Rock, Ark., on the brief), for appellant.

Louis Tarlowski, of Little Rock, Ark., Sp. Counsel for State of Arkansas (J. Hugh Wharton, of Little Rock, Ark., Atty. for State Revenue Department of Arkansas, on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is a suit in equity brought by the appellant, a Delaware corporation and a common carrier of passengers by bus in interstate commerce, against the Commissioner of Revenue of the State of Arkansas, for an injunction against the proposed application to it of Act 11 of the Special Session of the General Assembly of Arkansas of 1934, p. 28, and Act 67 of

*Rehearing denied March 21, 1939.

the General Assembly of Arkansas of 1933, p. 194. Act 11 provides for the imposition of a tax of 6½ cents per gallon on all gasoline sold or used in the State of Arkansas.[1] Act 67 prohibits any person from driving into the State any motor vehicle carrying more than 20 gallons of gasoline in its fuel tank, until the tax upon the excess has been paid.[2] The court below denied an injunction and dismissed the bill of complaint.

The plaintiff in its bill alleged, and the evidence disclosed, that the Commissioner of Revenue was demanding that the appellant pay to the State, under threat of the penalties provided by law, 6½ cents on every gallon of gasoline in excess of 20 gallons which was brought into the State in the fuel tanks of its interstate busses; that the appellant was an interstate carrier by bus, was duly qualified to operate in Arkansas and other states, and was subject to regulation as to its business and rates as such carrier; that it was a large user of gasoline, the cost of which was necessarily reflected in its rates and charges; that it was necessary to the proper and economical operation of its business that it have storage facilities for gasoline outside of the State of Arkansas; that the erection of such facilities within the State would be uneconomical and wasteful; that because of the distances traversed by its interstate busses in Arkansas and because of the normal gasoline consumption of such busses (5 miles per gallon), it was impractical, inconvenient and dangerous to have such busses enter Arkansas with 20 gallons or less of gasoline in their gas tanks and to rely upon refueling such busses at roadside filling stations in Arkansas; and that, as a result of the threats of the Commissioner, the appellant was placed in the position of having to adopt one of three alternatives: (1) restricting the amount of gasoline in the fuel tanks of interstate busses entering Arkansas to 20 gallons, thereby assuming the risk of road failures, stoppages and inconvenience, and necessitating refueling such busses at roadside points in Arkansas, with consequent delay, fire hazard, and increased cost of operation; (2) setting up in Arkansas storage facilities for gasoline, at great expense; or (3) paying the tax of 6½ cents on every gallon in excess of 20 gallons brought into Arkansas in the fuel tanks of its interstate busses, regardless of whether such excess was used in that State or not.

The practical operation of the challenged tax as applied to the appellant's business can best be shown by considering its effect upon the appellant in connection with the busses which it operates between Memphis, Tennessee, and St. Louis, Missouri, a distance of 342.7 miles. The appellant maintains storage facilities for gasoline at both of these points, where water transportation is available and gasoline can be purchased in bulk at favorable prices. The appellant pays in Tennessee the taxes imposed by the laws of that State upon the gasoline which it stores in Memphis; it pays in Missouri the taxes on its gasoline stored in St. Louis. The bus leaving Memphis for St. Louis carries in its fuel tank enough gasoline to make the entire trip to St. Louis (approximately 70 gallons). It travels 3 miles in Tennessee before reaching the Arkansas line. It travels through Arkansas a distance of 77.9 miles, using approximately 16 gallons of gasoline in that State. The remainder of the gasoline in the fuel tank is consumed in traveling from the Arkansas line to St. Louis, a distance of 261.8 miles, upon the highways of Missouri. In returning from St. Louis to Memphis, the

---

[1] "Section 22. Paragraph (c) of Section 1 of Act No. 63 of the General Assembly, approved February 25, 1931, is amended to read as follows:

" '(c) There is hereby levied a privilege or excise tax of six and one-half cents on each gallon of motor vehicle fuel as defined in this Act, sold or used in this State or purchased for sale or use in this State.' "

[2] "Section 1. On and after the passage of this Act it shall be a violation of the law for any person, co-partnership or company to drive or cause to be driven into the State of Arkansas any automobile or truck carrying over twenty (20) gallons of gasoline in the gasoline tank of such automobile or truck or in auxiliary tanks of said trucks to be used as motor fuel in said truck or motor vehicles until the state tax thereon has been paid.

"Section 2. Any person, co-partnership or company violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding one hundred ($100) dollars. Each load carried into the state shall constitute a separate offense."

574

bus is fueled at St. Louis. In entering Arkansas it may or may not have in excess of 20 gallons in the fuel tank, depending, of course, upon how many gallons it started with from St. Louis. Assuming that the bus, in traveling each way, had 70 gallons in its fuel tank, it would pay to the State of Arkansas on its trip north a tax on approximately 69 gallons of gasoline, while upon its return it would pay no tax at all, although the wear and tear upon the highways of Arkansas would be the same on each trip.

The appellant does not now contend that the tax of which it complains may not be imposed by the State of Arkansas with respect to gasoline consumed or to be consumed upon the highways of Arkansas, as compensation for the use of the highways, but it does contend that that State may not impose a tax upon gasoline which is carried in interstate commerce for use in Missouri or Tennessee, because that would constitute a direct and unreasonable burden upon interstate commerce.

 The tax in suit is a tax imposed for highway purposes. This is so because the revenues derived from the tax are segregated for such purposes. Moreover, the Supreme Court of Arkansas, in Sparling v. Refunding Board, 189 Ark. 189, 71 S.W.2d 182, 186, has said that the Arkansas gasoline tax is "a privilege tax, a tax on the privilege of selling and using gasoline in this state, payable at the source * * * for substantially the only available use to which it may be put, for highway travel," and, page 186 of 71 S.W.2d, "is not a property tax, but is a privilege tax for the use of the highways." Whether that court meant that it was a tax on all gasoline, however used, for the privilege extended to the user of the gasoline of making use of the highways of the State, or was a tax on all gasoline for the benefit of the highways, we think it is not necessary for us to determine. The decision of that court is controlling as to the meaning and extent of the requirements of the taxing act, Hicklin v. Coney, 290 U.S. 169, 172, 54 S.Ct. 142, 78 L.Ed. 247, and there can be no question that the tax is imposed for highway purposes.

Reduced to its lowest possible terms, the question for decision, we think, is whether the imposition of the tax upon gasoline carried, for use in other states, in the fuel tank of a motor vehicle traveling in interstate commerce can be sustained.

That the tax is a direct burden on interstate commerce, cannot be controverted.

If it is to be sustained at all with respect to gasoline to be used in other states, it must be sustained upon the theory that the method employed for determining the amount of the tax constitutes a fair measure for ascertaining the compensation which lawfully may be exacted by Arkansas from the appellant for the use which it makes of the highways of the State. In Interstate Transit, Inc. v. Lindsey, 283 U.S. 183, 186, 51 S.Ct. 380, 381, 75 L.Ed. 953, the Supreme Court said:

"As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use, Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 S.Ct. 230, 72 L.Ed. 551, or by the express allocation of the proceeds of the tax to highway purposes, as in Clark v. Poor, supra [274 U.S. 554, 47 S.Ct. 702, 71 L.Ed. 1199] or otherwise. Where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. Hendrick v. Maryland, 235 U.S. 610, 612, 35 S.Ct. 140, 59 L.Ed. 385; Interstate Busses Corp. v. Blodgett, 276 U.S. 245, 250–252, 48 S.Ct. 230, 72 L.Ed. 551. Compare Interstate Busses Corp. v. Holyoke Street R., 273 U.S. 45, 51, 47 S.Ct. 298, 71 L.Ed. 530. But the mere fact that the tax falls upon one who uses the highway is not enough to give it presumptive validity."

While we can understand how the use of state highways by a carrier can be roughly measured by the amount of gasoline which that carrier uses to move its vehicles over the highways, we are unable to comprehend how the use of the highways of one state can appropriately be measured by the amount of gasoline carried in the fuel tank of an interstate carrier for use upon the highways of another state.

We think this case is ruled by Interstate Transit, Inc. v. Lindsey, supra. There the court had under consideration an Act of Tennessee which imposed a tax upon persons operating interstate motor busses on the highways of that State, which tax was graduated according to the passenger-carrying capacity of the busses. The court demonstrated that the tax was not imposed for highway purposes or as compensation for the use of the highways, but was imposed for the privilege of doing business in Tennessee. The court then considered whether the passenger-carrying capacity of a bus was a reasonable measure for determining compensation for use of the highways. It said, in this connection, page 190 of 283 U.S., page 382 of 51 S.Ct.:

"It is true that such a measure is often applied in taxing motor vehicles engaged in intrastate commerce. Being free to levy occupation taxes, states may tax the privilege of doing an intrastate bus business without regard to whether the charge imposed represents merely a fair compensation for the use of their highways. Compare Gundling v. Chicago, 177 U.S. 183, 189, 20 S.Ct. 633, 44 L.Ed. 725. But since a state may demand of one carrying on an interstate bus business only fair compensation for what it gives, such imposition, although termed a tax, cannot be tested by standards which generally determine the validity of taxes. Being valid only if compensatory, the charge must be necessarily predicated upon the use made, or to be made, of the highways of the state. Clark v. Poor, supra. In the present act the amount of the tax is not dependent upon such use. It does not rise with an increase in mileage traveled, or even with the number of passengers actually carried on the highways of the state. Nor is it related to the degree of wear and tear incident to the use of motor vehicles of different sizes and weights, except in so far as this is indirectly affected by carrying capacity. The tax is proportioned solely to the earning capacity of the vehicle. Accordingly, there is here no sufficient relation between the measure employed and the extent or manner of use to justify holding that the tax was a charge made merely as compensation for the use of the highways by interstate busses. We need not therefore consider whether the tax exacted from this appellant is unreasonably large or unjustly discriminatory."

█ The rule that the measure of the compensation exacted by a state from an interstate carrier for the use of its highways must have some reasonable relation to the use which that carrier makes of the highways, has not been modified or overruled. It is true that in Hicklin v. Coney, 290 U.S. 169, 173, 54 S.Ct. 142, 144, 78 L.Ed. 247, the Supreme Court said:

"Appellant insists that an undue burden is placed upon interstate commerce because the license fees are based on the 'carrying capacity' of the vehicles. The state court held that the fees 'are collected, as provided for by section 8517, for the purpose of maintaining the public highways over which such motor vehicles shall operate, as compensation for their use.' The statute provides for the segregation, for this purpose, of the moneys collected. See Clark v. Poor, 274 U.S. 554, 555-557, 47 S.Ct. 702, 71 L.Ed. 1199. In this view the fees are not open to the objection raised in Interstate Transit, Inc., v. Lindsey, 283 U.S. 183, 186, 188, 51 S.Ct. 380, 75 L.Ed. 953. Carrying capacity, the size and weight of trucks, unquestionably have a direct relation to the wear and hazards of the highways. It is for this reason that the authority of the state to impose directly reasonable limitations on the weight and size of vehicles, although applicable to interstate carriers, has been sustained. Morris v. Duby, 274 U.S. 135, 143, 47 S.Ct. 548, 71 L.Ed. 966; Sproles v. Binford, 286 U.S. 374, 388, 389, 52 S.Ct. 581, 76 L.Ed. 1167. As the state may establish such regulations directly, the state may adjust its license fees, otherwise valid as being reasonable and exacted as compensation for the use of the highways, according to carrying capacity in furtherance of the same purpose. Clark v. Poor, supra."

This language we do not regard as modifying Interstate Transit, Inc. v. Lindsey, supra, which was cited with approval in Aero Mayflower Transit Co. v. Georgia Commission, 295 U.S. 285, 289, 55 S.Ct. 709, 79 L.Ed. 1439; Morf v. Bingaman, 298 U.S. 407, 410, 56 S.Ct. 756, 80 L.Ed. 1245; Ingels v. Morf, 300 U.S. 290, 294, 57 S.Ct. 439, 81 L.Ed. 653.

█ Since we can perceive no reasonable relation between the amount of gasoline carried through Arkansas in the fuel tank of an interstate bus for use in states other than Arkansas and the use which that bus makes of the highways of Arkansas,

576

we think that the State was powerless to include such gasoline in measuring the compensation to be paid by the appellant for the use of the highways of the State.

■ There is, we think, another vice which inheres in this taxing statute as sought to be applied by the taxing authorities. It imposes a direct burden not only upon the interstate commerce done by the appellant in the State of Arkansas, but also upon the interstate commerce which it carries on in other states. By taxing the means whereby a bus makes a through trip from Memphis to St. Louis, the State taxes gasoline which is merely transported through Arkansas for use in interstate commerce in Missouri. The weight of the gasoline is negligible and by no stretch of the imagination can it be said to increase the wear and tear upon the highways of Arkansas. That portion of the gasoline in the fuel tanks of these interstate busses which is intended for use and is used in states other than Arkansas is the medium whereby the appellant carries on interstate commerce in those states. To tax that medium is to directly and unjustifiably burden that commerce. Helson et al. v. Kentucky, 279 U.S. 245, 252, 49 S.Ct. 279, 73 L.Ed. 683.

■ Another consideration which militates against sustaining the sort of tax which Arkansas seeks to exact from the appellant here is that that would open the door to the cumulative taxation of the same gasoline by all states through which an interstate motor vehicle passes. If it were possible for a bus starting from New York City for Los Angeles, California, to carry enough fuel for the entire trip, it might be subjected to such a tax as is here complained of upon the contents of its fuel tank at the borders of each state through which it passed. It is our understanding that, while a state may require an interstate carrier operating within its borders to bear its proportionate share of the burden of government, it may not tax that part of the commerce which is done by that carrier in other states. Fargo v. Michigan, 121 U.S. 230, 7 S.Ct. 857, 30 L.Ed. 888; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 255–257, 58 S.Ct. 546, 82 L.Ed. 823, 115 A. L.R. 944.

The decree appealed from is reversed and the court below is directed to enter a decree in favor of the appellant, enjoining the appellee from enforcing the challenged tax against it with respect to all gasoline in the fuel tanks of its interstate busses which is being carried through Arkansas for use in other states.