14179

STATE *EX REL*. DANIEL, ATTORNEY GENERAL, v. JOHN P. NUTT COMPANY, INC., *ET AL.*

(185 S. E., 25)

21

May, 1935.

*Messrs. John M. Daniel, Attorney General, J. Ivey Hum-phrey* and *M. J. Hough, Assistants Attorney General,* and *Eugene S. Blease,* for plaintiff,

*Messrs. Williams & Busbee,* for defendants W. C. Plunk-ett, O. L. Baughman, Blane Johnson and Mrs. Evelyn Johnson.

*Messrs. Jefferies & McLeod,* for other defendants.

November 23, 1935.

The opinion of the Court was delivered by MR. G. DUN-CAN BELLINGER, ACTING ASSOCIATE JUSTICE.

This action is brought by the Attorney General in the name of the State, asking that this Court adjudge the Act of 1933, regulating motor vehicles, to be valid, that the defendants be enjoined from prosecuting thirteen separate actions commenced in the Courts of Common Pleas for five different counties of the State to enjoin the enforcement of the Act, and, further, that the defendants be enjoined from operating motor vehicles in violation of the Act.

The Act was approved April 28, 1933 (38 St. at Large, p. 340), and, as slightly amended by the Act approved March 10, 1934 (38 St. at Large, p. 1311), regulates all motor trucks, except those primarily designed for passenger transportation; limits the gross weight of any unit (truck, trailer, or combination), to 20,000 pounds, the height to 12½ feet, the width to 90 inches, and the length to 35 feet, all including load; it forbids the operation of any separate four-wheel trailer on any highway, and reduces the speed limits of motor trucks; it imposes special authority and duties upon the State Highway Department, county and municipal road authorities, as well as all law-enforcement officers, with reference to the enforcement of the Act. The

Act became effective upon its approval by the Governor, except as to motor vehicles upon which the annual registration fee required by the law of this State had been paid prior to the approval of the Act; as to these, it became effective on December 31, 1934.

The thirty-four defendants had instituted thirteen separate actions in the Courts of Common Pleas of five different counties. These actions were all commenced in December, 1934, and at later dates—all more than nineteen months after the Act had been approved. The sheriffs and law enforcement officers of the respective counties and municipalities, as well as officers and law-enforcement agents of the State Highway Department and the Railroad Commission, were named as parties defendant to these actions. The object of the actions was to secure interlocutory and permanent injunctions against the enforcement of the Act, so as to protect the defendants in the continued operation of the 221 motor vehicles that defendants owned and were regularly operating over the highways of this State in violation of the Act. In all of these actions interlocutory injunctions or temporary restraining orders were procured on the *ex parte* application of defendants as plaintiffs therein. In some instances, bonds were required; in other instances, they were not. But the parties enjoined in no instance could recover damages under the conditions of the bonds, and the bonds did not secure the State in any fines for violations of the statute committed by defendants under the protection of the injunctions.

Defendants move to strike various allegations from the complaint on the ground that they state conclusions of law and are irrelevant. The motion to strike goes to the extent of a demurrer; that is, the defendants contend that, if the motion be granted *in toto,* the alelgations remaining in the complaint do not state a cause of action. The complaint must be considered with reference to the subject-matter embraced. It necessarily describes the actions commenced by defendants and shows the contentions

made by defendants in those actions, in order to establish that all of the actions involved identical questions and had a common purpose, and in order to establish, further, that all of the constitutional questions raised by defendants in those actions had already been decided adversely by controlling authority. The jurisdiction of this Court is invoked in part to avoid a multiplicity of suits, and in part to aid in the enforcement of an important criminal statute. The allegations of the complaint are pertinent and proper from this viewpoint. They state relevant facts, because the relevant facts here have a legal color, and the statement of them is necessarily made in the form of legal conclusions. Plaintiff concedes that in some minor instances the complaint is possibly subject to the criticism directed against it. But to sustain the motion to strike in these minor details would not avail defendants, as the remaining allegations state a good cause of action.

Defendants next contend that this Court cannot exercise its original jurisdiction in this case because the actions pending in the Courts of Common Pleas involve the same parties and the same cause of action, and further contend that, if this Court has jurisdiction, it should not be exercised because of comity towards the Courts of Common Pleas, and that it should leave the actions to proceed in those Courts.

But there is a difference as to the parties to the actions instituted by defendants in the Courts of Common Pleas and the parties to this action. Neither the State nor the Attorney General was a party to any of the actions instituted by defendants. *State ex rel. Jernigan v. Stickley,* 80 S. C., 64, 61 S. E., 211, 128 Am. St. Rep., 855, 15 Ann. Cas., 136. The State is the party plaintiff to this action. The parties defendant to the actions commenced by the defendants are not parties to this action, and all parties defendant to this action were not parties to any one of the actions pending in the Courts of Common Pleas. Likewise, this action is essentially different from the actions commenced by

defendants. The questions involved here are not the same as the questions involved in the actions in the Courts of Common Pleas. The subject-matter of this action is the condition brought about, not by one of the actions in the Court of Common Pleas, but as a result of all of those actions. One of the essential facts shown here is that the enforcement of an important criminal statute of the State has largely, if not entirely, failed since January 1, 1935, by reason of the combined result of the activities of the defendants. The jurisdiction of this Court exists and should be exercised. *State v. Kizer,* 164 S. C., 383, 162 S. E., 444, 81 A. L. R., 722; *King v. Aetna Insurance Co.,* 168 S. C., 84, 167 S. E., 12; *State ex rel. Coney v. Hicklin,* 168 S. C., 440, 167 S. E., 674. The original jurisdiction of this Court is concurrent with the jurisdiction exercised by the Court of Common Pleas, but under the established rule this Court may enjoin defendants in a proper case from prosecuting their actions in the Court of Common Pleas. In so doing, this Court does not undertake to enjoin the Court of Common Pleas, but acts directly upon the parties. *Salinas v. C. Aultman & Co.,* 49 S. C., 378, 27 S. E., 407, 21 C. J., 78, § 51.

*State v. Broad River Power Company,* 157 S. C., 1, 153 S. E., 537, is conclusive that the Attorney General has the authority to commence and maintain this action. The question was clearly presented and carefully considered in that case, and the contention of the defendants in this respect must be denied. We may add, however, that, if we bear in mind the purpose of the Act in question, the large investment that the State had made in its highway system, and the alarming loss of life and property damage caused by the motor vehicles using the highways, then Sections 2255 and 3115 of the Code of 1932 expressly authorize the Attorney General to commence and maintain an action such as this in the name of the State.

Defendants next contend that the statute violates the due process clause of both State and Federal Constitutions and the commerce clause of the latter (Const. S. C., Art 1, § 5;

Const. U. S., Amend. 14 and Art. 1, § 8, cl. 3). They say that they purchased the trucks that are now forbidden when these were of lawful size and weight; that they have developed a business and have existing contracts for hauling in both interstate and intrastate commerce; that all of this represents an expenditure of money and effort, which will now become of less or no value if the statute be sustained. Defendants say that they can prove these allegations, and strongly argue that they should be given the opportunity to do so, and that the question should not be decided against them without such an opportunity being accorded—that is, on the pleadings—in what defendants term a summary manner. Unfortunately for the defendants, all of these positions and arguments have been advanced from time to time, and all of these questions are now foreclosed by the decisions of Courts of both persuasive and controlling authority.

The police power of the State concerning its highways has not been impaired by the federal aid statutes. The State may prescribe regulations adapted to conserve its highways as to cost of construction and maintenance, to reasonably restrict their use in favor of normal traffic, and to promote the safety of all who may use them. That there is a direct relation between the weight and size of motor vehicles and the consequent damage to the highways resulting from their use, and the consequent danger to others from their operation, is no longer open to controversy, and reasonable regulations in this respect are within the police power and entirely within the legislative domain. It is recognized that the commerce clause of the Federal Constitution goes merely to the extent of inhibiting such regulations as result in discrimination against motor vehicles used in interstate commerce, and does not restrict the State in the exercise of its police power in this respect, so long as the statute applies equally to all. *Æro Mayflower Transit Co. v. Georgia Public Service Commission*, 295 U. S., 285, 55 S. Ct., 709, 79 L. Ed., 1439; *Sproles v. Binford*, 286 U. S., 374, 52 S. Ct., 581, 76 L. Ed., 1167; *Con-*

*tinental Baking Co. v. Woodring,* 286 U. S., 352, 52 S. Ct., 595, 76 L. Ed., 1155, 81 A. L. R., 1402; *Morris v. Duby,* 274 U. S., 135, 47 S. Ct., 548, 71 L. Ed., 966, 967; *State v. Hicklin,* 168 S. C., 440, 167 S. E., 674, affirmed *Hicklin v. Coney,* 290 U. S., 169, 54 S. Ct., 142, 78 L. Ed., 247; *Ashland Transfer Co. v. State Tax Commission,* 247 Ky., 144, 56 S. W. (2d), 691, 87 A. L. R., 534; *State v. Wetzel,* 208 Wis., 603, 243 N. W., 768, 86 A. L. R., 274; *Contract Cartage Co. v. Morris* (D. C.), 59 F. (2d), 437.

Defendants next contend that various exemption in the statute operate as unreasonable and arbitrary discriminations against the trucks that they own and which are outlawed thereby. Similar exemptions, with possibly one material exception, have been considered and sustained in other cases, the decisions in which are either controlling on this Court or are persuasive because of their reason and logic.

Section 2 of the Act (38 St. at Large, p. 341), exempts trucks designed primarily for passenger transportation, and the general definition of trucks excludes passenger carrying buses. This section provides that a "motor truck" and "semi-trailer" shall be considered as one unit, thus bringing both together within the weight and length limits imposed by the statute; and this section further exempts farm wagons from the definition of "semi-trailer" carried in the statute. *Sproles v. Binford* and *State v. Hicklin, supra,* are conclusive that these exceptions are within the legislative power and do not constitute unreasonable discriminations.

*Contract Cartage Co. v. Morris* and *Ashland Transfer Co. v. State Tax Commission, supra,* in opinions that are satisfactory both in their reasons and conclusions, support the prohibition of Section 3 of the statute (38 St. at Large, p. 342), whereby the use of separate four-wheel trailers is prohibited.

The reasoning of *Sproles v. Binford, supra,* is conclusive as to the validity of the exemption carried by Section 7 of the Act, as amended in 1934 (38

St. at Large, p. 1311), which excepts therefrom trucks engaged in the transportation of lumber, poles, piles, and logs from the mill or forest to shipping points, or from forest or mill to consumer.

Defendants vigorously attack the exception of Section 9 (a) (38 St. at Large, p. 343), which exempts vehicles owned by any agency of the United States, State of South Carolina, or any county or city or incorporated town thereof. But it is settled that the Legislature may consider the public interest (*Continental Baking Co. v. Woodring, supra*), and is further entitled to consider the frequency and character of use and to adapt its regulations as to various classes of operations with respect thereto (*Sproles v. Binford, supra; State v. Hicklin, supra*). Likewise here we think and hold that a government that builds and maintains a road may make such exceptions with respect to the use thereof. The Legislature could reasonably assume that the Federal and State governments, as well as their agencies and political subdivisions, might be trusted to use trucks that would not damage the highways or endanger other travelers thereon.

The exception carried by Section 9 (a), as to equipment used only in husbandry, is sustained by the reasoning of the Court in *Sproles v. Binford, supra.* While the exception here relates to weight as well as to size, the same facts afford a reasonable basis for the broader exemption. See, also, *Ashland Transfer Co. v. State Tax Commission, supra.*

Defendants vigorously attack the exemption made by Section 9 (d) (38 St. at Large, pp. 343, 344), which covers telephone, telegraph, or electric power companies, hauling by means of their own vehicles their own materials and equipment for construction or maintenance of their own property. We think and hold, however, that this was a reasonable exercise of the legislative discretion. The Legislature knew that these companies differ as a class from other truck owners and must use trucks strong

enough and large enough to support their heavy machinery and supplies and long enough to carry their poles, in order to perform their service to the public. The Legislature also knew that these trucks do not use the highways regularly, or even frequently, for long trips, as do other freight-carrying motortrucks, and the Legislature could take into consideration this frequency and character of use in such classification, as pointed out in *Continental Baking Co. v. Woodring, Sproles v. Binford,* and *State v. Hicklin, supra.* In this respect, the Legislature knew that there are relatively few of these companies, and that each company uses comparatively few trucks—if more than one—exceeding the limits imposed by the statute, and that ordinarily the character of the work in which they are engaged requires the trucks to proceed at a slow rate of speed. The Legislature knew, further, that a large portion of the public is benefited by the construction and uninterrupted operation of telephone, telegraph, and electric power companies, including the operators of other motor vehicles on the highways— more particularly those regularly engaged in the operation of their own trucks or engaged in such operation as common carriers or contract carriers. The Legislature also knew that these utility corporations are responsible concerns, already subjected by statute to the regulation by the Public Service Commission, and that any restriction necessary as to their trucks could come from that source. *State v. Wetzel, supra,* sustained an exemption as to the length limit of the Wisconsin statute in favor of trucks operated by such companies, along similar lines, and we are satisfied that the broader exemption of our statute was within the legislative discretion.

Defendants next contend with great earnestness that their answers and returns raise issues of fact, and that they should be accorded an opportunity to present their testimony in support thereof. Defendants say that, under the established practice, they should have the opportunity to prove that the motor vehicles which they own and operate in ex-

cess of the limits prescribed by the Act do not increase the cost of highway construction or maintenance, do not interfere with, or limit, the use of the highways for normal traffic, and do not endanger the safety of others using the highways, as well as various other facts of similar character—all going to show that the statute is unreasonable and the exemptions therein discriminatory in their application to the vehicles owned and operated by defendants.

The Legislature, however, after due consideration of all the facts and circumstances, concluded that the Act was necessary, first, "to achieve economy in highway cost," and, second, "to permit the highways to be used freely and safely by the traveling public." That heavy vehicles increase the cost of construction and maintenance of highways in a fact of common knowledge. For more than twenty years this State has graduated the license fees of motor vehicles according to their weight. All know that the danger of a motor vehicle increases with its weight, and that the width and length of motor vehicles bear direct relation to the safety of others using the highways.

In *Rast v. Van Deman & Lewis Co.*, 240 U. S., 342, 36 S. Ct., 370, 374, 60 L. Ed., 679, L. R. A., 1917-A, 421, Ann. Cas., 1917-B, 455, the Court stated the pertinent rule as follows: "It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S., 61, 78, 31 S. Ct., 337, 55 L. Ed., 369, Ann. Cas., 1912-C, 160. *It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the Courts to arbitrate in such contrariety.*" (Italics added.)

The same rule has been recognized in this State since *Town Council of Summerville v. Pressley*, 33 S. C., 56, 11 S. E., 545, 8 L. R. A., 854, 26 Am. St. Rep. 659. In *Stewart v. Western Telegraph Co.*, 93 S. C., 119, 76 S. E., 111,

113, the Court quoted the rule from the *Lindsley case,* as follows: "(1) The equal protection clause of the fourteenth amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. (2) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. (3) *When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.* (4) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." (Italics added.)

The Supreme Court of the United States, in the case of *Radice v. People of N. Y.,* 264 U. S., 292, 44 S. Ct., 325, 326, 68 L. Ed., 690, reviewed a conviction in the Courts of New York, which prohibited the employment of women in restaurants for work at night, and the Court said: "Testimony was given upon the trial to the effect that the night work in question was not harmful; but we do not find it convincing. Where the constitutional validity of a statute depends upon the existence of facts, Courts must be cautious about reaching a conclusion respecting them contrary to that reached by the Legislature; and if the question of what the facts establish be a fairly debatable one, it is not permissible for the Judge to set up his opinion in respect of it against the opinion of the lawmaker. The State Legislature here determined that night employment of the character specified was sufficiently detrimental to the health and welfare of women engaging in it to justify its suppression, and, since we are unable to say that the finding is clearly unfounded, we are precluded from reviewing the legislative determination"—citing cases.

*State v. Wetzel, supra,* is peculiarly illustrative in this respect. Wetzel had been convicted for a violation of the Wisconsin statute after a trial on the merits. On appeal there was a stipulation as to the facts, in which it was agreed that Wetzel's vehicle—outlawed by the statute because of its excessive length—was safer on the road than other vehicles permitted by the statute. In a well-considered opinion, the Court held that the power of the Legislature to exercise its judgment and discretion within the legislative domain could not be defeated by stipulation of the parties, even though one of the parties was the state itself.

The Court here judicially knows that the facts exist, bringing the legislative power into play. *State v. Broad River Power Co.,* 177 S. C., 240, 248, 181 S. E., 41. In *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S., 61, 31 S. Ct., 337, 341, 55 L. Ed., 369, Ann. Cas., 1912-C, 160, the Court pointed out that, on demurrer in such a case as this, the Court would consider, not only the allegations of the bill, but also matters "within the range of common knowledge and what is otherwise plainly subject to judicial notice"—citing many cases.

Illustrative of the power and duty of the Court to consider and determine the constitutionality of measures enacted in the exercise of the police power against charges of discrimination, without taking testimony as to the facts, are *Morris v. Duby, supra; State ex rel. Zimmerman v. Gibbes,* 171 S. C., 209, 172 S. E., 130; *Great Atlantic, etc., Co. v. Spartanburg,* 170 S. C., 262, 170 S. E., 273, and *State ex rel. Coney v. Hicklin, supra.* As illustrations of cases deciding other constitutional questions on the pleadings, see *State v. Moorer,* 152 S. C., 455, 150 S. E., 269; *Wingfield v. South Carolina Tax Commission,* 147 S. C., 116, 144 S. E., 846; *Santee Mills v. Query,* 122 S. C., 158, 115 S. E., 202.

Defendants question the validity of the Act under various sections of the Constitution of this State. All of these questions have been so exhaustively considered and conclusively

settled by decisions of this Court that a mere reference thereto must suffice; else this opinion will be unduly extended.

*State v. Moorer,* 152 S. C., 455, 150 S. E., 269, is conclusive that the statute is not an improper delegation of legislative powers. Such a contention with reference to similar statutes has been elaborately considered and conclusively denied in *Sproles v. Binford, supra; Contract Cartage Co. v. Morris, supra; State v. Wetzel, supra,* and *Ashland Transfer Co. v. State Tax Commission, supra.*

Obvious considerations arising on a mere reading of the statute itself are conclusive that the Act is not special legislation in violation of Section 17 of Article 3 of our Constitution under the established rule. *Freeman v. Holliday,* 165 S. C., 408, 164 S. E., 20; *Witt v. People's State Bank,* 166 S. C., 1, 164 S. E., 306, 83 A. L. R., 1068; *McKiever v. City of Sumter,* 137 S. C., 266, 135 S. E., 60, and *State v. Moorer, supra.*

*State v. Moorer, supra,* is likewise conclusive against the contention that the Act was not read three times in each House, and is therefore in violation of Section 18 of Article 3 of our Constitution.

The further contention that the Act is a special law in contravention of Section 34 of Article 3 of our Constitution is likewise without merit. *Dean v. Spartanburg County,* 59 S. C., 110, 37 S. E., 226; *State v. Hammond,* 66 S. C., 219, 44 S. E., 979; *McKiever v. City of Sumter, supra.*

The judgment of this Court is:

First. That the Act of 1933, as amended by the Act of 1934, is a valid and constitutional statute and entitled to be enforced according to its terms.

Second. That defendants are perpetually enjoined and restrained from proceeding with their various actions in the Courts of Common Pleas.

Third. That the defendants are perpetually enjoined and restrained from operating motor vehicles in violation of said Act.

Fourth. That plaintiff has the right to hereafter apply to this Court for the issuance of such order or orders, writ or writs, as may be necessary or proper to carry into effect the conclusions and judgment of this Court.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.