79 So.2d 803

Alex LEONARD

v.

STATE.

6 Div. 849.

Court of Appeals of Alabama.

Feb. 8, 1955.

Rehearing Denied March 15, 1955.

D. H. Markstein, Jr., and John W. Cooper, Birmingham, for appellant.

Si Garrett, Atty. Gen., and Wm. H. Sanders, Asst. Atty. Gen., for the State.

PRICE, Judge.

This prosecution is based on Section 89 of Title 36 of the 1940 Code, as amended, and was begun by affidavit in the Jefferson County Court of Misdemeanors. From the judgment of conviction in that court defendant appealed to the circuit court, where the Solicitor filed his complaint charging the defendant with operating a motor vehicle, "to-wit a truck, upon the public highways of Jefferson County, Alabama, with an axle weight in excess of 18,000 pounds."

According to the State's evidence the offense occurred in Jefferson County on July 8, 1953. The truck was weighed at the New Merkle scale weighing platform on Alabama Highway 91, south of Birmingham. The weight on the number 2, or pull, axle was measured at 19,440 pounds.

For the State, two highway patrolmen and a "weight man" all of whom were present at the weighing, testified in detail regarding the construction and operation of the scales. The salient portions of this testimony is thus set out in the brief of the Attorney General, and is fully borne out by the record:

"The weighing platform in question is parallel to the highway, constructed of concrete, and about ten or twelve feet wide and one hundred feet long. A depression some six or eight inches deep runs across the width of the platform and in this depression the scales are placed, one on each side of the platform, so that each wheel can be weighed. Dirt or gravel is placed in the depression around the scale boxes to keep them steady. As the truck, or truck and trailer, is driven along the platform it is stopped at each axle as the wheels of that axle come to rest on the scales. In this way the weight of each axle is determined. * * * the scales are reset or adjusted one or more times during the course of any one eight-hour weighing period by 'zeroing' them, that is, by turning a crank on the scales until two pointers on the dial are in alignment."

The defendant was a truck driver for Floyd & Beasley Transfer Company and was hauling a load of general freight from the company's terminal at the time he was stopped at the weighing station. He testified the copy of the manifest given him showed the weight of the load to be within the legal limit, and he did not know the truck was overweight.

The company's terminal manager testified the weights shown on the manifest were copied from the shipping orders and the loaded truck was not weighed at the terminal before it left.

Appellant contends, (1) the scales were not established as being accurate scales, (2) Section 89 of Title 36, Code 1940 is unconstitutional; (3) when the statute is used in conjunction with Section 87 of Title 36, as amended by Act No. 827 of the 1953 legislature, Acts 1953, p. 1114, the burden of proof is misplaced and the defendant is denied due process of law.

It is provided in Section 87 of Title 36, Code 1940, that "such designated weighing devices shall be checked by the weights and measures division of the department of agriculture and industries and certified to be correct within the tolerances prescribed under the rules and regulations established by the state department of agriculture and industries".

Patrolman Gregory testified for the State that the scales were under his supervision and control and were checked for accuracy by the department of agriculture on March 27, 1953, the date of this weighing being July 8, 1953; that he was present on the occasion when they were checked. He was then asked whether or not a certification of accuracy was placed on the scale. The defendant objected on the ground the question called for testimony res inter alios acta. The court then read the amendment to Section 87, Title 36, enacted as Section 1 of Act No. 827, approved September 19, 1953, which states: "A certificate issued by the chief of the division of weights and measures of the department of agriculture and industries, signed by such official, under oath, and counter-signed by the commissioner of agriculture and industries, in which the chief of the division of weights and measures certifies that scales, or weighing devices, have been checked and approved as required under the provisions of this section and section 85 of this chapter, and found to be correct, within prescribed tolerances, shall be received in any court as prima facie evidence of the fact that the scales or weighing devices designated and identified in such certificate have been checked and approved for accuracy in accordance with the requirements of this section and section 85 of this chapter, provided such certificate must show that the scales or weighing devices were checked for accuracy within a period of four months (120) days prior to the date on

which the motor vehicle was weighed to determine whether such vehicle was being operated in violation of this chapter", and asked the witness, "was that done?" The witness answered, "Yes, sir, it was done." The court overruled the objection and the defendant reserved an exception to the ruling on the ground, among others, that the act had not been passed at the time of this weighing. The court then sustained the objection, stating that he was holding this statute did not apply in this case. In response to questions by defense counsel the witness stated he had the certificate that was mailed to him by the commission.

At the close of the State's testimony defense counsel moved that the State's evidence be excluded because the certificate as provided for by said Act No. 827 as to the accuracy of the scales, had not been introduced in evidence.

The court reminded counsel that the objection to evidence relative to such certificate had been sustained at counsel's insistence. Counsel then added as a further ground of said motion that all the testimony with reference to the accuracy of the scales was based on hearsay and there was no competent evidence on which to base a finding that the scales were accurate. The court overruled the motion and defendant excepted.

█ There is no merit in defendant's contention that officer Gregory's testimony as to the inspection of the scales by the department of agriculture and industries was based on hearsay. The witness testified he was present and personally observed the test. Moreover, his testimony as to the inspection was admitted without objection. The defendant's objection was sustained as to the testimony concerning the certificate of accuracy, purported to have been issued as to the scales, and defendant could not be heard to complain because of its non-introduction in evidence. The motion to exclude the evidence was properly overruled.

The defendant further contends that the scales were shown to be inaccurate by the State's testimony that one of the scales had been broken at one time and returned to the factory for repair; that the scales were transported from one weighing station to another in a pick-up truck, and by a demonstration in court, on a scale said to be of the type used at the weighing stations, in which defendant's counsel weighed himself, his weight varying from 170 to 220 pounds, depending on his position on the scale, counsel first having stated his correct weight to be 160 to 170 pounds.

It is also defendant's contention there was no proof that the scales were used in a manner to insure accurate readings. Counsel asserts in brief: "The State's witnesses testified that it was absolutely necessary that the scales be operated while level to record accurate readings. There was no competent testimony that the concrete platform in which the scales were placed for the weighing was level, no testimony that the scales themselves were level and did not have dirt or gravel underneath them at the time of the weighing, no testimony that the vehicles moving across the scales had not disturbed the scale boxes so as to allow dirt and gravel to get underneath the scale boxes and make them unlevel. The State's witnesses testified that there was no means to check whether or not the scales were being operated in a level condition prior to the weighing."

It is said in the annotation in 21 A.L.R.2d at page 1200, that "As far as the decisions directly touching the question to be annotated are concerned, an almost tomb-like silence is to be found on whether there is any presumption, or where the burden of proof lies, as to the accuracy of scientific and mechanical instruments used to measure speed, temperature, time, and the like."

One of the cases commented upon in the annotation is that of Commonwealth v. Parish, 138 Pa.Super. 593, 10 A.2d 896, 897. The Pennsylvania statute provided that a police officer suspecting a violation of the speed laws must follow an automobile on the highway to time its speed for a distance of not less than one-quarter of a mile, using a motor vehicle equipped with a speedometer which had been tested for accuracy within a period of thirty days prior to the alleged

violation.. The police officer testified he timed the rate of speed of defendant's car with a speedometer which had been tested for accuracy in his presence at an official testing station twelve days before. The court's holding was: "The Commonwealth made out a prima facie case through the arresting officer who testified that he was present and observed the test as it was made, and by his further testimony that he followed the defendant on the highway for more than one-quarter of a mile and, from a reading of his speedometer, determined that the defendant was driving his car at a speed in excess of the legal limit. There was no burden on the Commonwealth of proving the accuracy of the officer's speedometer except by competent proof that it had been 'tested for accuracy within a period of thirty days prior to the alleged violation.' "

■ Here, according to the testimony of officer Gregory, the scales had been tested for accuracy by the proper authority. Moreover, the presumption prevails that one charged with a legal duty will perform that duty. See Ala.Dig., Criminal Law, ☞ 322.

■ Under all the evidence presented the question of the accuracy of the scales, and of the guilt of the defendant, was for the jury's determination, and was sufficient to sustain the verdict. The requested affirmative charge was therefore properly refused.

■ Appellant admits in brief that the legislature may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and if such legislative intention appears, the courts must give it effect, although the intent of the doer may have been innocent. Smith v. State, 223 Ala. 346, 136 So. 270; State ex rel. Black v. Southern Express Co., 200 Ala. 31, 75 So. 343; Fiorella v. City of Birmingham, 35 Ala.App. 384, 48 So.2d 761, certiorari denied 254 Ala. 515, 48 So.2d 768.

But he argues that no such legislative intention appears from the statute under consideration and it should be construed as inapplicable to defendant since he is merely an employee following his employer's instructions in driving the truck and is not shown to have had any knowledge that the truck was overweight nor intent to violate the statute.

In the case of Smith v. State, supra, it was declared [223 Ala. 346, 136 So. 271]: "This rule has been generally, though not quite universally, applied to the enforcement of statutes passed in aid of the police power of the state where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. Whether or not in a given case a statute is to be so construed is to be determined by the court by considering the subject-matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the Legislature."

It was said of such a statute in Commonwealth v. Burall, 146 Pa.Super. 525, 22 A.2d 619, 622:

"The purpose of statutes prohibiting the use of public highways by motor vehicles of excessive weight is to prevent injury to the public property in the form of damage to roads, bridges, etc., and further to insure the safety of persons traveling such highways", and similar statutes have been consistently upheld against attack on constitutional grounds. Rayburn v. Richardson, Tex.Civ.App., 131 S.W.2d 1000, appeal dismissed 309 U.S. 632, 60 S.Ct. 718, 84 L.Ed. 990; State ex rel, Daniel v. John P. Nutt Co., 180 S.C. 19, 185 S.E. 25, certiorari denied 297 U.S. 724, 56 S.Ct. 668, 80 L.Ed. 1007; Whitney v. Johnson, D.C.Ky., 37 F. Supp. 65, affirmed 314 U.S. 574, 62 S.Ct. 117, 86 L.Ed. 465; South Carolina State Highway Department v. Barnwell Bros., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734.

■ It being the province of the legislature to determine what shall be permitted or forbidden in the interest of the public and

the language of the statute being plain and positive and not made to depend upon knowledge or intent, it is clear that the intention of the legislature was to make the commission of the act criminal "without regard to the intent or knowledge of the doer," and nothing is left to interpretation. Reese v. State, 73 Ala. 18.

 And it is no defense to a criminal prosecution that the accused committed the crime in the supposed discharge of his duty as the agent or employee of another person. 22 C.J.S., Criminal Law, § 39, p. 96; Moore v. State, 23 Ala.App. 432, 127 So. 796, certiorari denied 221 Ala. 50, 127 So. 797.

The case of People v. Vadakin, 204 Misc. 904, 125 N.Y.S.2d 25, decided by the Columbia County Court, New York, cited and relied on by defendant, held a New York truck weight statute unconstitutional as applied to a person unknowingly violating it, as depriving him of his livelihood without due process of law. A later case, People v. Rodenbach, 204 Misc. 905, 126 N.Y.S.2d 295, decided by the Erie County Court of New York specifically disapproved the holding in the Vadakin case, and upheld the same statute, and the holding in the Rodenbach case was affirmed by the Court of Appeals, 307 N.Y. 614, 120 N.E.2d 826.

Since the certificate provided for by the 1953 legislature, Title 36, Sec. 87, as amended by Act No. 827, was not introduced in evidence, defendant's contention that such provision is violative of the constitution is not before us for our review.

Refused charge 9 has been approved and its refusal held error by the court where the conviction of an accused was based wholly upon circumstantial evidence, Veasey v. State, 20 Ala.App. 478, 103 So. 67; Bufford v. State, 23 Ala.App. 521, 128 So. 126; Wilson v. State, 243 Ala. 1, 8 So.2d 422, but where as here, the conviction is based on positive evidence, its refusal has been held justified. Davis v. State, 8 Ala.App. 147, 62 So. 1027; Brown v. State, 33 Ala.App. 97, 31 So.2d 670; Ledbetter v. State, 34 Ala. App. 35, 36 So.2d 564, certiorari denied 251 Ala. 129, 36 So.2d 571; Head v. State, 35

Ala.App. 71, 44 So.2d 441; Odom v. State, 253 Ala. 571, 46 So.2d 1.

Other requested charges were covered by the oral charge and charges given for defendant or were inaccurate statements of the law and were properly refused.

The judgment is affirmed.

Affirmed.

CARR, P. J., not sitting.