A jury found appellant guilty of manslaughter on a trial under an indictment which, omitting its formal parts, charged:
 ". . . Tracy R. Heathcock . . . did recklessly cause the death of Christopher Lane Boswell by operating a tractor-trailer truck in a reckless manner, and hitting a motor vehicle driven by Christopher Lane Boswell, in violation of 13A-6-3 (a)(1) of the Code of Alabama, 1975."
Code of Alabama 1975, § 13A-6-3 (a)(1) provides:
"A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or . . ."
The court fixed defendant's punishment at imprisonment for five years and sentenced him accordingly. By Code of Alabama 1975, § 13A-6-3 (b), manslaughter is a Class C Felony; by §13A-5-6 (a)(3), the *Page 1200 
limitations upon a sentence of imprisonment for a Class C felony are prescribed as "not more than 10 years or less than 1 year and 1 day."
Appellant's first contention is that the State's evidence did not "present a prima facie case" and that "the trial court erred in overruling defendant's motion to exclude the evidence at the conclusion of the State's case." The parties agree that a correct determination of such contention hinges on whether defendant acted "recklessly" as charged in the indictment and as the word "recklessly" is defined by Code of Alabama 1975, §13A-2-2 (3) as follows:
 "The following definitions apply to this Criminal Code:
". . . .
 "(3) RECKLESSLY. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of section 13A-3-3, acts recklessly with respect thereto."
We now set forth a brief summary of the evidence for the State. Christopher Lane Boswell, the alleged victim, was killed about 3:30 P.M. on June 20, 1980, as a result of a collision between the Honda automobile he was driving and a tractor-trailer truck being operated at the time by the defendant. The truck had been proceeding down a hill on Rock Creek Road as the automobile was proceeding up the hill. The "right front tire of the tractor had rolled over the hood of" the Honda automobile. Both vehicles were proceeding around a curve. Only a few moments before said collision, the truck had collided with another motor vehicle as the truck was going down and the other vehicle was going up the same hill. The other vehicle was knocked off the road by the collision. Immediately before the first collision mentioned, the truck was a little over the line and "into the lane" of the other vehicle. According to one witness for the State who arrived at the scene of the accident soon after it occurred, the defendant was seen "sitting on the highway beside the police car and upon being asked `what happened,' the defendant `said he just lost control of it.'" The first automobile that collided with defendant's truck, the automobile that the victim was driving, and the tractor-trailer truck defendant was driving came to rest in the lane of travel, or on the shoulder of the lane of travel, to defendant's left of the center of the pavement of the road upon which the three vehicles were travelling immediately before each collision.
The "posted speed limit" on the Rock Creek Road was thirty-five miles per hour, as to which there seems to be no dispute. According to one of the witnesses for the State, the driver of the automobile that first collided with defendant's truck, the truck was travelling at the time "between 45 and 50." Another witness for the State testified that he conversed with defendant on the scene soon after the accident happened and was informed by the defendant as follows:
 "He was asked how fast he was traveling and he stated approximately 37 to 38 miles an hour. When asked how big a load he had, he stated he did not know.
 "He thought the accident occurred around 3:15 or so. He stated that he had been driving this particular rig — this truck and trailer three months. The trailer however was new and he had — they had purchased or started driving that particular trailer on Monday of that week. This was the first or second time that he had been down Rock Creek Road.
 "They normally haul down the Alliance Road to Birmingport. The driver felt the reason he lost the truck was that he cut the steering wheel too quickly." *Page 1201 
Deputy Royce Field testified that about 1:30 on the afternoon of June 20, 1980, he saw the tractor-trailer truck traveling between 15 and 20 miles an hour proceeding down Rock Creek Road and followed it, that the driver crossed the double yellow line approximately two and a half feet on two occasions, but on neither instance for a distance of more than fifty feet. The officer stopped the tractor-trailer and identified defendant as the driver thereof and the tractor-trailer truck as the same unit that was involved in the collision in which Christopher Boswell was killed. The truck was loaded with coal. The officer required that the truck be weighed and it was found to weigh 96,400 pounds, which was in excess of the gross weight limit. He told defendant that he had crossed the solid double yellow line, that he was gaining speed coming down the mountain and had reached the speed of between 40 and 45 miles per hour, that it was hazardous for the large coal truck to be running in such a manner and that he should keep his truck weight within the state limit. He further told appellant that he had observed the brakes of the left front tandem axle overheating and smoking. The witness testified that the "State weight limit" on the truck was 80,000 pounds with an allowance for "10 percent tolerance for scale tolerances." The witness testified that he issued an overweight ticket to appellant but that he did not give him a ticket for "speeding, driving on the wrong side of the road, or for reckless driving." He further testified that the brakes continued to operate even when hot and that the truck had operative brakes.
The truck weight ticket on the truck on the trip on which the collision occurred shows a gross weight of 94,660 pounds.
There was no evidence and no claim by the State that defendant was intoxicated, which leaves the third sentence of Code 1975, § 13A-2-2 (3) without a field of application. We must now determine whether there was substantial evidence to support the finding of the jury that defendant acted "recklessly" within the meaning of that adverb as defined by the remaining two sentences of § 13A-2-2 (3). Although the evidence is far from conclusive on the point, we find that the evidence as summarized above constitutes substantial evidence that defendant was "aware of and consciously disregarded" a substantial and unjustifiable risk that the result [the collision in which a human being was killed] would occur and that the "risk" was "of such nature and degree that disregard thereof" constituted "a gross deviation from the standard of conduct that a reasonable person would observe in the situation." We realize that his conduct can readily be judged too harshly and that the jury could have done so by the verdict it rendered. Nevertheless, the verdict is supported by substantial evidence, and we should not disturb it on the grounds asserted by appellant as to the sufficiency of the evidence at the time the State rested its case and defendant's motion to exclude the evidence was presented. The trial court was not in error in overruling the motion.
Although no issue is raised on appeal as to the sufficiency of the evidence at the time of the submission of the case to the jury, we note that the evidence presented by the defendant consisted exclusively of his testimony. It was generally exculpatory of a state of mind requisite to manslaughter. Nevertheless, though favorably impressive from a reading thereof, it was not sufficient to justify a withdrawal of that issue from a determination by the jury.
Appellant's second contention is that the trial court erred in admitting the testimony of Deputy Royce Field as to what he observed and what he told defendant on the occasion when defendant was going down the same hill in the same truck about two hours before the fatal collision occurred. As soon as it became apparent that the State proposed to introduce such evidence by Deputy Field, a hearing was conducted out of the presence of the jury in which the witness was interrogated by State's counsel and defendant's counsel. The hearing comprises about twelve pages of the transcript. During the first part of the hearing, the State showed by the witness what he had observed when he saw the truck proceeding *Page 1202 
down the hill about two hours before the fatal collision occurred and what he told defendant when he thereafter stopped the truck and had it weighed. Thereupon, with the jury still out of the courtroom, the following occurred:
"THE COURT: Any other questions, Mr. Short?
"MR. SHORT: That is all I have.
 "THE COURT: I understand there are probably several aspects you want to object to.
 "MR. MARTENSON: Judge, I think you can divide it up into two separate parts of his testimony. The first part I think is clearly a classic case of inadmissible testimony. That is, what he saw the operator do at a time prior to the accident in question at or near where the latter scene would be. I think it is just completely offered for the probative value of showing that what he did some two hours before was some custom or habit in driving down where this accident occurred, and would be very comparable in attempting to elicit testimony of the day before or a couple of hours before the accident. I saw the same accident — in a section where the accident occurred, the Defendant run the traffic light. Attempting to show that he ran it at the time of the accident which is clearly not admissible in this case.
 "So, that part I don't have any trouble with at all. I think it is definitely inadmissible.
 "The next part is the portion of his testimony concerning conversations which he had, even if he doesn't go into what occurred beforehand. Conversations he had beforehand with Defendant, here, they say, well that is admissible as tending to show — give the Defendant some knowledge of danger involved. But yet, they don't show that what this man told the Defendant had any relationship to the — what occurred at the time of the accident in question. That is, he says well, I told him to watch his brakes coming down there or I told him to be careful and not cross the yellow line coming down there.
 "But, that doesn't necessarily show that this is any knowledge of inherently dangerous situation or something that is going to cause an accident later on under different circumstances and different loads to the Defendant.
 "So, if you would weigh all the factual circumstances, I don't think that you can say that that conversation gives any knowledge or intent on the part of the Defendant."
A long colloquy then transpired among the court and counsel for the respective parties, which resulted in a statement by the court that it would overrule defendant's objections to the questions relative to what the witness observed as he saw the truck going down the hill and what he told defendant after he stopped the truck and had it weighed. The colloquy was concluded as follows:
 "THE COURT: Brakes, what caused the brakes to smoke. There is no testimony as to how Deputy Field was able to determine speed. I am sure there may be evidence.
 "But, with that in mind we will bring the jury back in. I will give you an exception.
 "MR. MARTENSON: Judge, could I ask the Court when the jury comes back in, to note our objection to the questions concerning the previous driving down this road and concerning the conversation that he had with Mr. Heathcock without me having to make them and I will assign the grounds that I have just assigned here?
 "THE COURT: Mr. Murray. If you will, let the record reflect that. Bring the jury back in."
Appellant's present insistence as to the admissibility of Deputy Field's testimony is prefaced by the following statement:
 "On the trial of a person for the alleged commission of a particular crime, evidence of the defendant doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show the defendant's bad character, inclination, or propensity to *Page 1203 
commit the type of crime for which he is being tried."
The statement is supported in almost identical language in Gamble, McElroy's Alabama Evidence, § 69.01 (1), which is footnoted by a number of authorities, including Brasher v.State, 249 Ala. 96, 30 So.2d 31 (1947), relied upon by appellant. Notwithstanding the correctness of the statement, we are unable to agree with appellant that "the only probative function" of the evidence under consideration "is to show his [defendant's] bad character, inclination or propensity to commit the type of crime for which he is being tried." Another probative function of the evidence under consideration was to furnish evidence of defendant's awareness of a substantial and unjustifiable risk, in driving as he did on the occasion of the fatal accident, of a collision between the truck and another motor vehicle in which a human being would be killed. The general exclusionary rule does not prohibit such evidence. The trial court was not in error in admitting it.
A third contention of appellant is concluded by the following argument in appellant's brief:
 "In the case at the bar, the court erroneously admitted evidence that Appellant's tractor-trailer was overloaded in excess of the weight limits set by 32-9-20, Code of Alabama 1975, (R. 23) (R. 49). The statute was intended by the Legislature to prevent injury to the roads and not intended to impose culpability in a criminal action. In admitting such evidence, over objection of counsel, the Appellant's rights were substantially prejudiced."
We have no doubt that one intention of the Legislature in enacting the law as now found in Code of Alabama 1975, §32-9-20, a lengthy section governing the size and weight of trucks, trailers and semi-trailers traveling on the highways of Alabama, was, as appellant says, "to prevent injury to the roads," but we do not agree with appellant that this was the only intention of the Legislature:
 "The obvious purposes for enacting truck weight laws is for the safety of the public, and keeping highways in good condition for the traveling public. Travel upon the highways must be as safe as it can reasonably be made consistent with their efficient use. Any overloaded truck creates a safety hazard upon the public highway as well as contributing to a bad state of repair." State Department of Public Safety v. Scotch Lumber Co., Inc., 293 Ala. 330, 302 So.2d 844, 846 (1974)
A final insistence on a reversal is directed at the following portion of the court's oral charge:
 "The fact that I told you that ["the weight limit of the type vehicle alleged in this incident is eighty thousand pounds" with "an enforcement tolerance of ten percent" and "that is a violation of the Code of Alabama."] is no indication that it has been violated or that such a violation is criminal negligence or any such violation proximately caused the death of the deceased. It is for you [the jury] to decide whether or not the statute is applicable. Whether it has been violated and whether or not such violation is criminal negligence. And whether or not any such violation proximately caused the death of the deceased."
At the apparent conclusion of the court's oral charge, the court called upon the attorneys for any "exceptions to my charge," and defendant's counsel said:
 ". . . We object to the Court's charge that the jury may find negligence — criminal negligent homicide or manslaughter based upon a violation of the weight limit statute which you read. And then told them toward the end of your charge, that the fact that you read the statute was not an insinuation that it was or was not violated or that it did or did not cause the accident. But, that it was up to them to determine whether or not there had been a violation of that statute which proximately caused the accident in question.
 "There are two reasons we cite as that being erroneous. Number one, there is absolutely no testimony sufficient to allow the jury to determine that the weight of that truck had anything to do with this *Page 1204 
accident. Number two, the law of the State of Alabama is clear that the purpose of that statute was for the purpose of the protection of the roads and the highways and not for the purpose of the protection of the public. That would be an issue for the jury to determine in determining either criminal negligent homicide or manslaughter itself."
Without approving the exact language of the portion of the charge to which the objection was made or the exception taken, or any implication thereof to the effect that the court was submitting to the jury the determination of a legal question as distinguished from a factual issue, the action of the court in the premises does not constitute reversible error. The reasons for the exception, or the grounds of the objection, to the particular part of the court's oral charge, as stated by defendant, cannot be sustained. His "Number one" reason that "there is absolutely no testimony sufficient to allow the jury to determine that the weight of that truck had anything to do with this accident" when applied to its excess weight over the limit prescribed by statute could well be true, but, even so, it is hardly questionable that its enormous weight under all the circumstances of the incident was a factor in the causation of the collision that caused the fatal injury to the alleged victim of the homicide. The "number two" reason includes an incorrect statement, as previously shown herein, that the weight statute is not partly at least "for the purpose of the protection of the public." The particular part of the court's oral charges was as favorable to defendant as any absolutely correct charge on the subject could have been, and perhaps it was more so.
We have reached our conclusions in this case with great respect for the view of appellant that the judgment of conviction and sentence is more severe than justice requires. To a great extent, he and Mr. Boswell were victims of misfortune, rather than a heart bent on evil. Nevertheless, the question as to whether defendant "recklessly caused the death" as alleged in the indictment was an issue for the jury to determine, and we find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur, except BOWEN, J., who concurs in the result only.