TYSON, Judge.
Leon Curry was charged with and convicted of operating an overweight vehicle, in violation of the laws of the State of Alabama. The trial judge imposed a fine on the appellant of $500.
Donald Ralph Berry, Jr. testified that he is an Alabama State Trooper assigned to the enforcement division of the Department of Public Safety, and he runs the weight detail for six counties, including Marengo County. On the morning of March 29, 1985, he and his weight crew set up a portable weigh station at the intersection of Third Avenue and Areola Road in De-mopolis, Alabama. The other members of the weight crew were: the weight crew chief, James Edmonds, and Barry Mitchell and Dale Mitchell.
As the trucks passed by the station, each was stopped and weighed, except those that were obviously underweight. Those trucks were allowed to pass.
As the trucks that were to be weighed pulled onto the scales, Berry and Barry Mitchell would observe the digital readings on the left or driver’s side of the truck, and Edmonds and Dale Mitchell would observe the readings on the right or passenger’s side of the truck. Then Barry and Dale Mitchell would call out the number readings from the scales on their respective side of the truck and Edmonds would write down the numbers.
Sometime during the morning in question, this appellant drove up in a tarped dump truck. Berry stated that trucks with tarps were always weighed because the load in the truck can not be seen due to the tarp. Berry testified that the tires on the appellant’s truck were “bulged out,” which indicated to him that the truck was “probably loaded in excess of the legal weight.” (R. 16) Each of the five axels on the appellant’s truck were weighed and then the weights were totaled. After this result was determined, Berry issued the appellant a ticket for operating an overweight vehicle. Berry stated that approximately twenty or thirty trucks were weighed at this particular location on the morning in *348 question and he gave out a total of five tickets.
Edmonds testified that he records and maintains all weight figures that are called out by his weight crew. He stated that the portable scales that are used in weighing the trucks are inspected, adjusted, and certified periodically. The scales that were used on the morning of March 29, 1985, had been inspected and certified on December 18, 1984. He stated that the scales must be certified at least every 120 days. The period from December 18, 1984 to March 29, 1985 was less than the 120 day period.
As the appellant’s truck was being weighed on the morning in question, he wrote down all the figures that were called out to him. The weight figures on the appellant’s truck were recorded as follows:
1st axle 10,100 pounds
2nd axle 21,900 pounds
3rd axle 21,300 pounds
4th axle 23,400 pounds
5th axle 26,200 pounds
Total weight 102,900 pounds
Edmonds testified that the maximum weight limit for a truck with five axles is 80,000 pounds. A ten percent scale tolerance is allowed, and if a truck is only ten percent overweight, a ticket is not issued. The weight of the appellant’s truck exceeded the maximum weight including the ten percent scale tolerance.
The appellant testified that, on the morning in question, he was transporting a load of limestone from Allied Products to the Citadel Plant. When his truck was loaded at Allied Products, his load was weighed by computer scales on the front end loader. His truck is filled until the load reaches the legal weight. The usual load is 84,000 or 85,000 pounds. When the appellant pulled his truck up to the scales on this particular morning, Berry asked if he was loaded and how much he was hauling. The appellant told Berry he had 84,000 or 85,000 pounds in the truck. Berry then instructed his crew to weigh the truck. The appellant did not think he had a load of 102,000 pounds. When the appellant took his truck to the Citadel Plant, it was weighed. The appellant did not know the results of the weighing at the Citadel Plant.
I
The appellant contends the weighing of his truck constituted an illegal search and seizure and was contrary to the laws of the State of Alabama.
In Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court held that random spot checks of vehicles for documents by the police were in violation of the Fourth Amendment to the United States Constitution.
However, the Supreme Court stated that the States were free to develop other “methods for spot checks that involve less intrusion or do not involve the unconstrained exercise of discretion.” Delaware v. Prouse, 99 S.Ct. at 1401. “Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.” Delaware v. Prouse, 99 S.Ct. at 1401. In footnote 26 of this opinion, the Supreme Court stated that their holding does not “ cast doubt on the permissibility of roadside truck weigh-stations and inspection checkpoints, at which some vehicles may be subject to further detention for safety and regulatory inspection than are others.”
All four members of the weight crew testified that all trucks that passed by their location were stopped and weighed unless they were obviously underweight.
The stopping and weighing of the appellant’s truck did not involve the unconstrained or unbridled discretion of Trooper Berry and his crew, and thus, did not constitute the type of impermissible intrusion contemplated by the Fourth Amendment.
Section 32-9-32, Code of Alabama 1975, provides in pertinent part:
“The director of the highway department is authorized to designate, furnish instructions to, prescribe rules and regulations for the conduct of and to supervise official stations for determining the weight of motor vehicles at such points as it may be deemed necessary. Such *349 designated weighing devices shall be checked by the weights and measures division of the department of agriculture and industries and certified to be correct within the tolerance prescribed under the rules and regulations established by the state department of agriculture and industries, and checks shall be made at such points as is deemed necessary by the weights and measures division of the department of agriculture and industries.”
Berry testified that he is in charge of the weight crew for six counties, and his instructions are to set up weigh stations where he feels the necessity to act. The fact that Berry is instructed to decide where to set up weigh stations does not affect the validity of the weigh stations. Obviously, he is instructed to determine whether to set up these stations because he is in charge of these particular counties and is in the best position to determine where they should be located. The fact that these stations are portable and not permanent does not mean they do not constitute “official stations.”
Furthermore, § 32-9-31, Code of Alabama 1975 permits an officer (which includes a State trooper according to § 32-9-3, Code of Alabama 1975), who has reason to believe that the weight of a truck is in excess of the legal limit, to weigh that vehicle by portable or stationary scales.
Berry testified that the “bulging of the tires” on the appellant’s truck indicated to him that the truck was “probably loaded in excess of the legal weight.” (R. 16) Thus, Berry had reason to believe the appellant’s truck was overweight and had the authority to weigh this truck.
The stopping and weighing of the appellant’s truck was not in violation of any provision of the United States Constitution or the laws of the State of Alabama.
II
A
During Edmonds’s testimony, he stated he was present and observed the inspection of the scales by the Department of Agriculture and Industries of Alabama. This testimony was admitted over a hearsay objection. In Leonard v. State, 38 Ala.App. 138, 79 So.2d 803, cert, denied, 262 Ala. 702, 79 So.2d 808 (1955), this court held that an officer’s testimony as to the inspection of weighing scales by the Department of Agriculture and Industries was not hearsay because the officer testified that he was present and observed the inspection and testing of the scales. Thus, Edmonds’s testimony concerning the inspection of the scales was properly admitted at trial.
B
The certificate of accuracy of the scales issued by the Department of Agriculture and Industries was admitted into evidence. Section 32-9-32, Code of Alabama 1975, provides in part:
“A certificate issued by the chief of the division of weights and measures of the department of agriculture and industries, signed by such official, under oath, and countersigned by the commissioner of agriculture and industries, in which the chief of the division of weights and measures certifies that scales, or weighing devices, have been checked and approved as required under the provisions of this section and section 32-9-31 and found to be correct, within prescribed tolerance, shall be received in any court as prima facie evidence of the fact that the scales or weighing devices designated and identified in such certificate have been checked and approved for accuracy in accordance with the requirements of this section and section 32-9-31; provided, that such certificate must show that the scales or weighing devices were checked for accuracy within a period of four months (120 days) prior to the date on which the motor vehicle was weighed to determine whether such vehicle was being operated in violation of this chapter.”
The appellant contends the above section violates his right to cross-examine the person who conducted the inspection of the scales. He also contends the certificate of *350 accuracy was inadmissible on hearsay grounds.
Edmonds testified that a certificate of accuracy is issued in the regular course of his operations and .that the certificate is normally issued after an inspection is done. The requirements of § 12-21-43, Code of Alabama 1975, and Rule 44, ARCP pertaining to business records were met in' this instance. The certificate of accuracy was properly admissible under the business records exception to the hearsay rule. This exception is applicable in criminal cases. Neal v. State, 372 So.2d 1331 (Ala.Cr.App.), appeal after remand, 372 So.2d 1348 (Ala. Cr.App.), cert, denied, 372 So.2d 1348 (Ala. 1979).
Furthermore, the appellant’s rights were not violated by his inability to cross-examine the person who cpriducted the inspection of the scales. “The very essence of the admissibility of a,business record is its probability of trustworthiness.” Neal, supra at 1343.
C
The appellant’s contention that the entry into evidence of the weight sheet was in violation of the hearsay rule is without merit. The fact that Edmonds did not personally observe the figures that were called out to him by Barry Mitchell affects the weight but not the admissibility of those figures on the weight sheet in question. Meriwether v. Crown Investment Corporation, 289 Ala. 504, 268 So.2d 780 (1972).
Ill
The appellant contends the trial judge erred in imposing the maximum fine of $500. He asserts the fine in this case should have been imposed based on his culpability rather than the number of pounds the truck was in excess of the maximum weight limit.
Section 32-9-5, Code of Alabama 1975, provides:
“The operation of any truck, semitrailer truck or trailer in violation of any section of this chapter or of the terms of any permit issued under this chapter, shall constitute a misdemeanor, and the owner thereof, if such violation was with his knowledge or consent, and the operator thereof shall, on conviction, be fined not less than $100.00 nor more than $500.00 and may also be imprisoned or sentenced to hard labor for the county for not less than 30 days nor more than 60 days.”
The statute above does not state that the penalty imposed upon an operator of a truck for the violation of § 32-9-20 should be calculated on the basis of the operator’s degree of culpability in violating the truck weight restrictions.
In fact, § 32-9-20, Code of Alabama 1975, can be committed without regard to the intent or knowledge of the operator of the truck. Leonard, supra.
“ ‘The obvious purposes for enacting truck weight laws is for the safety of the public; and keeping highways in good condition for the traveling public. Travel upon the highways must be as safe as it can reasonably be made consistent with their efficient use. Any overloaded truck creates a safety hazard upon the public highway as well as contributing to a bad state of repair.’ State Department of Public Safety v. Scotch Lumber Co., Inc., 293 Ala. 330, 302 So.2d 844, 846 (1974).”
Heathcock v. State, 415 So.2d 1198, 1203 (Ala.Cr.App.), cert, denied, 415 So.2d 1198 (Ala.1982).
It is obvious that the more a truck is overweight, the more it endangers the safety of the public and contributes to the bad repair of our highway system. Thus, the imposition of a penalty based on the extent to which a truck’s weight exceeds the maximum legal limit is logical in view of the legislature’s purpose in enacting § 32-9-20.
Furthermore, the penalty imposed by the trial court was within the statutory limits prescribed by the legislature and this court has no authority to review a sentence which is imposed within the limits of a statute. Moreland v. State, 469 So.2d 1305 *351 (Ala.Cr.App.), cert, denied, 469 So.2d 1305 (Ala.1985).
The judgment of the trial court is, therefore, due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.